## STATE OF CONNECTICUT *v.* RICHARD PLASKONKA
## (8088)

O'CONNELL, LAVERY and MULCAHY, Js.

Argued January 18—decision released July 3, 1990

*Mary S. Chromik,* law student intern, with whom were *Timothy H. Everett* and *Richard Plaskonka,* pro se, for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, with whom, on the brief, were *John Bailey,* state's attor-

ney, and *Antonia Carabillo* and *Peter Soulsby,* assistant state's attorneys, for the appellee (state).

MULCAHY, J. The defendant appeals from his conviction, after trial to the court, of two motor vehicle infractions. The defendant was charged with failure to notify the motor vehicle department of a change of address as the registrant of a motor vehicle, in violation of General Statutes § 14-17a,[1] and as the holder of a motor vehicle operator's license, in violation of General Statutes § 14-45.[2]

The defendant claims that the trial court (1) entered guilty verdicts upon insufficient evidence, (2) improperly decided the case prior to hearing closing arguments, (3) failed to read a defendant's exhibit, and (4) improperly limited the cross-examination of a state's witness. We affirm the judgment of the trial court.

I

The defendant claims that the evidence presented at his trial was not sufficient to convict him of either infraction. General Statutes § 51-164n (f) provides that "[i]n any trial for the alleged commission of an infraction, the practices, procedure, rules of evidence and burden of proof applicable in criminal proceedings shall

---

[1] "[General Statutes] Sec. 14-17a. NOTICE OF CHANGE IN REGISTRANT'S ADDRESS. (a) A person holding a certificate of registration for a motor vehicle issued by the commissioner shall notify the commissioner within forty-eight hours of any change of his address. The notification shall include his old address and his new address. (b) Failure to give the notice required by this section shall be an infraction."

[2] "[General Statutes] Sec. 14-45. NOTICE OF CHANGE IN OPERATOR'S ADDRESS. (a) A person holding a license for the operation of a motor vehicle issued by the commissioner shall notify the commissioner within forty-eight hours of any change of his address. The notification shall include his old address and his new address. (b) Failure to give the notice required by this section shall be an infraction."

apply." Thus, the state had the burden of proving every element of the infractions beyond a reasonable doubt. See *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985). In reviewing a sufficiency of evidence claim, we construe the evidence in the light most favorable to sustaining the conviction and determine whether the trier of fact could reasonably have inferred guilt beyond a reasonable doubt from the evidence presented. Id.

The record discloses that the trial court could reasonably have concluded that the defendant did not give notice of his address change to the motor vehicle department within the required forty-eight hour period.

The defendant was cited for the infractions on November 25, 1988. On that date, as the defendant followed a police cruiser into the parking lot of a donut shop, the officer noticed that the front license plate was missing from the defendant's car and, in the course of questioning the defendant about the absence of the license plate, the officer asked the defendant for his license and registration. The officer had personal knowledge that the defendant had recently changed his address. The officer later testified that there was no indication on the license or registration that the defendant had given notice of his address change. Also, an immediate check with the motor vehicle department's "collect system" indicated a listing of only the defendant's *prior* address.[3]

The defendant testified that he changed his address on September 17, 1988. His theory of the case was that he had sent a change of address postcard to the depart-

---

[3] In his brief, the defendant points out that the state did not lay a foundation demonstrating that the "collect system" represents an up-to-date source for all new addresses for which the commissioner of motor vehicles has received notice. The defendant, however, failed to make this objection at trial. In the absence of exceptional circumstances, this court will not review a claim that was not raised in the trial court. Practice Book § 4185; *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973).

ment of motor vehicles in a timely manner (although he could not remember the date), but the new address was not recorded in the motor vehicle department's system. The defendant testified that he once had worked at the motor vehicle department and knew from experience that there is a lag between the time papers are sent to the department, and the time that they are processed. In his oral argument, the defendant stated that delays in processing by the department can be as long as thirty days. The trial court noted that the lapse in the present case would have to have been almost seventy days.

The credibility of the witnesses was for the trier of fact to assess and that assessment will not be disturbed on appellate review. *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 153, 527 A.2d 679 (1987). The trial court simply did not believe the defendant. Construing the evidence in the light most favorable to sustaining the convictions, we find that it was sufficient to prove beyond a reasonable doubt that the defendant did not give the required notice within forty-eight hours.

## II

The defendant's second claim is that the trial court should not have rendered judgment prior to hearing oral arguments. At the close of evidence, the court immediately announced its findings of guilty and imposed fines on both counts. The defendant objected, stating that he was entitled to give a closing argument. The court then agreed to hear the defendant's argument, and, afterward, reduced the amount of the fines.

Both the Connecticut and the United States constitutions protect a defendant's right to voice closing arguments before the trier of fact. The sixth amendment guarantee in the federal constitution of the right to assistance of counsel has been held to include the right

to present closing arguments. *Herring* v. *New York,* 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed 2d 593 (1975). Also, article first, § 8, of the Connecticut constitution, which provides that "the accused shall have a right to be heard by himself and by counsel," has been held to guarantee a right to present a closing argument. *State* v. *Hoyt,* 47 Conn. 518, 534–37 (1880). The defendant enjoys the same right whether the trial is to a jury or to the bench. *Herring* v. *New York,* supra, 859–60. If the trial court denies the defendant an opportunity to give closing arguments, the reviewing court should grant a new trial. *State* v. *Hoyt,* supra, 536; see also *Herring* v. *New York,* supra. Under Practice Book § 874, the defendant may make a single closing argument, and, although a defendant represented by counsel has no right to share closing arguments with his attorney; *State* v. *Jennings,* 20 Conn. App. 721, 724, 570 A.2d 234 (1990); a pro se defendant must be allowed to make a closing argument.[4]

In the present case, the pro se defendant was afforded an opportunity to present a closing argument. He claims, however, that because the court announced its findings before hearing his closing argument, the court was no longer an impartial factfinder and the trial, as a whole, was rendered unfair.

The defendant cites *State* v. *Washington,* 182 Conn. 419, 438 A.2d 1144 (1980), for the proposition that the

[4] The defendant refers us to *Yopps* v. *State,* 288 Md. 204, 178 A.2d 879 (1962), a case discussed in *Herring* v. *New York,* 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). *Yopps* involved a bench trial in which the court summarily announced its verdict of guilty after the close of evidence. The defendant in *Yopps* objected and stated that he wanted to give closing arguments, but the court still refused to hear his arguments. The Maryland Court of Appeals held that the denial of an opportunity to present arguments violated the defendant's rights to assistance of counsel. *Yopps* v. *State,* supra, 207. The obvious difference between *Yopps* and the present case is that the defendant in this case was allowed to give oral arguments after he objected.

court was unfit to sit as trier of fact and listen to oral argument after having rendered findings. In that case, our Supreme Court held that the trial judge *in a jury case* must not expressly instruct the jurors that they may discuss the case among themselves prior to its submission to them. Id., 429. This rule is based on the concern that jurors who discuss the case before all of the evidence is presented to them will not weigh all of the evidence with the same degree of impartiality as they would otherwise. Id., 426.

The same concern is not present in this case. First, the court did not announce its findings until after *all* of the evidence was presented. Second, because the trial court agreed to listen to oral argument, we presume that it listened with impartiality, and our review of the record discloses nothing to the contrary. Finally, the fact that the court reduced the fine after listening to the defendant's oral argument amply persuades this court that the defendant received fair consideration.

### III

The defendant also claims that the trial court should have read the entire 122 pages of an exhibit. Because the defendant did not raise an objection at trial,[5] we must consider whether to review this unpreserved claim under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We decline to review this claim because,

---

[5] The court and the defendant engaged in the following colloquy concerning the defendant's exhibit:

"The Court: I will admit [the exhibit] into evidence. I'd like to see it, please.

"The Defendant: Did you want the whole 122 pages? You can have it.

"The Court: It's up to you.

"The Defendant: This might give you a better feel for the whole background of Officer Tyler.

"The Court: I do not intend to read 122 pages.

"The Defendant: I didn't think so, but . . .

"The Court: Please continue.

"The Defendant: Can I ask Officer Tyler some questions?

"The Court: Please continue."

although there is an adequate record for review, the defendant's claim is not of constitutional magnitude. See *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

The defendant fails to allege a constitutional violation in that he merely cites *State* v. *Wood,* 208 Conn. 125, 132–33, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988), for the proposition that the court was obligated to read the exhibit. This is an inaccurate reading of that case. In *Wood,* the court held that the trial judge has discretion to instruct the jurors simply to consider all of the evidence even when requested by the defendant to instruct the jurors to read all exhibits in their entirety. The defendant's claim does not present a constitutional issue.

We have already rejected the defendant's claim that the evidence against him was insufficient to support the convictions. That being so, his present argument seems to be made in the alternative: that although the evidence was sufficient to convict him on both counts, the trial court would have been more likely to acquit him had it read the entire exhibit. The defendant's claim, therefore, goes to the weight that the trial court gave the exhibit. Although the weight that the trial court gave the exhibit was minimal, such was not a violation of a constitutional right of the defendant. "Weighing the evidence . . . is the function of the trier of fact and this court will not usurp that role." *Gallo* v. *Gallo,* 184 Conn. 36, 38, 440 A.2d 782 (1981).

IV

Finally, the defendant claims that he was denied an opportunity to cross-examine the state's witness on issues affecting the witness' reliability and credibility. We review this claim under the *Evans* bypass,[6]

---

[6] *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

although the defendant did not raise the point at trial, because the issue implicates a fundamental constitutional right of the defendant to confront the witnesses against him.[7]

Claims of this nature are subject to a two step analysis. First, we determine whether the defendant received the minimum opportunity for cross-examination of adverse witnesses required by the constitution. See *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). If so, we then consider whether the trial court's restriction of cross-examination amounted to an abuse of discretion under the rules of evidence. *State* v. *Johnson,* 21 Conn. App. 291, 294, 573 A.2d 1218 (1990); *State* v. *Castro,* 196 Conn. 421, 424–25, 493 A.2d 223 (1985). " ' "To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon the cross-examination were clearly prejudicial.". . .' " (Citations omitted.) *State* v. *Castro,* supra, 426. If, however, the defendant is denied the right of effective cross-examination, there " ' "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Brookhart* v. *Janis,* 348 U.S. 1, 3 [86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966)].' *Smith* v. *Illinois,* 390 U.S. 129, 131 [88 S. Ct. 748, 19 L. Ed. 2d 956 (1968)." *Davis* v. *Alaska,* supra, 318.

This is not a case in which the defendant was barred from cross-examining an adverse witness on matters relating to credibility and reliability.[8] After carefully

[7] The defendant's right to confront the witnesses against him through cross-examination is guaranteed by the sixth amendment to the federal constitution and by article first, § 8, of our state constitution. At the present time there is no separate analysis of the defendant's right under the federal and state constitutions. See *State* v. *D'Ambrosia,* 212 Conn. 50, 57 n.5, 561 A.2d 422 (1989); *State* v. *Johnson,* 21 Conn. App. 291, 292 n.1, 573 A.2d 1218 (1990).

[8] The defendant cross-examined the state's only witness, the officer who issued the citations, on the following issues: (1) whether the defendant's

reviewing the record we find that the defendant received at least the minimum required opportunity to cross-examine.

Moreover, we find that the trial court did not abuse its discretion in limiting cross-examination.[9] The ultimate issue was whether the defendant had notified the commissioner of motor vehicles of his change of address within forty-eight hours. The officer testified that there was no indication on the defendant's license or registration, or in the police department's "collect" system that the defendant had given such notification. The defendant did not claim during his testimony at trial that his license and registration reflected his address change on November 25, 1988, the day in question. As stated, his theory of the case was that he had sent in timely notice to the department of motor vehicles, but it was not processed before November 25, 1988.

license had a change of address sticker on it on November 25, 1988; (2) whether the defendant followed the officer into the parking lot where the citations were issued or whether the officer followed the defendant; (3) whether the officer remembered the address that was on the defendant's registration at the time the citations were issued; (4) whether the officer saw, at that time, a new address printed in the new address box on the defendant's registration; (5) whether the officer fabricated the section on his police report that quoted the defendant as threatening that "Chief Schnabel certainly won't sit still for this"; (6) who had informed the officer that the defendant had changed his address; and (7) whether the officer had asked the defendant on November 25, 1988, if the defendant had changed the address on his license.

[9] The court sustained objections to the questions the defendant posed on the following subjects: (1) whether the state's witness had intentionally hit another police officer with a motor vehicle; (2) how the state's witness had determined that the defendant had followed him into the parking lot where the citations were issued; (3) whether the defendant had told the witness that the defendant had connections with persons at police headquarters; and (4) what were the names of the police officers who informed the state's witness that the defendant had changed his address. The defendant twice asked the witness if, on November 25, 1988, the witness had asked the defendant whether he had changed his address. The court sustained an objection to the question the second time, after it had already been asked and answered.

Because the defendant did not dispute the officer's statements of fact, his attempt to impeach the officer was not relevant. See *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 479 (1980) (no abuse of discretion where questions asked on cross-examination are collateral or cumulative).

The judgment is affirmed.

In this opinion the other judges concurred.