## STATE OF CONNECTICUT *v.* SAMUEL FINLEY
### (13324)

O'CONNELL, LAVERY and HEIMAN, Js.

Argued April 28—decision released June 28, 1994

*Susan M. Hankins,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*James A. Killen,* assistant state's attorney, with whom, on the brief, was *Mary M. Galvin,* state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals[1] from the judgment of conviction, rendered after a trial to the court, of arson in the first degree in violation of General Statutes § 53a-111 (a) (1).[2] On appeal, the defendant claims that the trial court improperly (1) rendered a judgment of conviction because the state failed to provide sufficient evidence to prove a violation of § 53a-111 (a) (1), (2) excluded evidence, and (3) rendered its finding prior to final argument by defense counsel. We affirm the judgment of the trial court.

The following facts are necessary for a proper resolution of this appeal. In the summer of 1992, an addition to the Laurel Ledge School was being constructed in Beacon Falls. On July 22, 1992, the defendant began working at the construction site. On July 23, 1992, after complaints from the foreman about the defendant's work production, Claude Boutote, the superintendent of the construction company, laid off the defendant. Boutote told the defendant that the lay off was due to lack of work. The following morning, the defendant returned to the construction site and walked into Bou-

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-111 provides in pertinent part: "(a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . .

"(b) Arson in the first degree is a class A felony."

General Statutes § 53a-100 (a) provides in pertinent part: "(1) 'Building' in addition to its ordinary meaning, includes any watercraft, aircraft, trailer, sleeping car, railroad car or other structure or vehicle or any building with a valid certificate of occupancy. Where a building consists of separate units, such as, but not limited to separate apartments, offices or rented rooms, any unit not occupied by the actor is, in addition to being a part of such building, a separate building; (2) 'dwelling' means a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present; (3) 'night' means the period between thirty minutes after sunset and thirty minutes before sunrise."

tote's trailer office. The defendant was carrying a clorox bleach container. The defendant said to Boutote, "I'm going to work today." In response, Boutote said: "No, you're not. You were laid off yesterday and you just go out and go home." The defendant then punctured the clorox bleach container. It contained kerosene that the defendant began spreading around the trailer, splashing some on Boutote's pants while stating "if I can't work, nobody else will."[3] After spreading the liquid, the defendant attempted to light a match as Boutote exited the trailer.[4] The defendant then followed Boutote out of the trailer and ran away. Immediately following the defendant's exit from the trailer, Boutote noticed that the trailer was on fire. The fire was extinguished by some construction workers. The fire caused damage to the trailer and to papers that were in the trailer.[5] The trial court found the defendant guilty. This appeal followed.

## I

The defendant first claims that the trial court improperly rendered a judgment of conviction because the state failed to provide sufficient evidence to prove a violation of General Statutes § 53a-111 (a) (1). Specifically, the defendant asserts that the state failed to present evidence to satisfy the requirement that the building was occupied or inhabited or that the defendant had reason to believe that the building may have been occupied or inhabited. We are unpersuaded.

---

[3] Boutote testified that Richard Gillis, a construction worker, was in the trailer when the defendant entered. Gillis and Boutote testified that Gillis left before Boutote or the defendant.

[4] There was no witness who actually saw the match ignite. Boutote saw the defendant only strike the match.

[5] The defendant testified that he went to the trailer with the intent of burning the blueprints on Boutote's desk with the kerosene. The defendant further testified that he poured the kerosene on the blueprints and left the trailer without lighting the liquid.

In determining the sufficiency of the evidence in arson cases, we look to the time that the defendant started the fire to ascertain whether the elements of § 53a-111 (a) (1) were met. See *State* v. *Moye,* 199 Conn. 389, 399, 507 A.2d 1001 (1986); *State* v. *Parmalee,* 197 Conn. 158, 162, 496 A.2d 186 (1985). "When we are called on to review a sufficiency of the evidence claim, we impose a two part analysis. We first construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Salz,* 226 Conn. 20, 31, 627 A.2d 862 (1993); *State* v. *Rivera,* 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993); *State* v. *Hooks,* 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We next determine whether, from that evidence and all the reasonable inferences that flow from the evidence, a trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. *State* v. *Salz,* supra [31]; *State* v. *Rivera,* supra [200–201]." *State* v. *Reddick,* 33 Conn. App. 311, 332, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994). Here, the trial court had before it evidence that Boutote saw the defendant strike the match as Boutote was departing the trailer, that the defendant exited the trailer immediately after Boutote, and that the trailer was on fire immediately after the defendant ran from it. Thus, even though there was no witness to the match igniting while Boutote was in the trailer, the trial court could reasonably infer from this evidence that the match ignited prior to Boutote's departure. Therefore, there was sufficient evidence for the trial court to find the defendant guilty of arson in the first degree in violation of General Statutes § 53a-111 (a) (1).

## II

The defendant next claims that the trial court improperly excluded evidence thereby violating his constitu-

tional rights to present a defense, to testify and to assistance of counsel. Specifically, the defendant asserts that the trial court abused its discretion by sustaining the state's objection to defense counsel's questions about the defendant's state of mind when he walked into the trailer on the morning of July 24, 1992.[6] The defendant concedes that he did not properly preserve this claim because he failed to articulate properly the constitutional claims. Practice Book § 4185. The defendant, however, requests review of this claim

---

[6] The transcript reveals the following dialogue:

"[Defense Counsel:] What happened then?

"[The Defendant:] All right. I walked into the trailer and I had the bag with me. I had my lunch, I had the container.

"Q. What was in the container?

"A. Kerosene.

"Q. What was your state of mind at this point?

"A. My state of mind was this—

"[State's Attorney:] Objection, Your Honor. Self-serving hearsay.

"Q. What was on your mind?

"[State's Attorney:] Objection.

"A. What was on my mind was to go back to work.

"[State's Attorney:] Objection. What's on his mind is irrelevant.

"Q. How did you feel?

"[State's Attorney:] Objection. That's not an admissible question, Your Honor.

"[Defense Counsel:] I think it's relevant, Your Honor.

"The Court: How he feels? I'll sustain the objection.

"Q. Go ahead. What did you do?

"A. . . . I went to take the top off the Clorox bottle. It was a half gallon bottle. I had a quart of kerosene in it. I went to take the top off. I couldn't get the top off, my hands were greasy, so I went into the pocket. I pulled out an old timer pocket knife, and I put a hole in the side of the bottle. As I was going through I told him, 'You ruined my plans, I'm ruining your plans here.'

"Q. What was your intent at that point?

"[State's Attorney:] Objection. Self-serving. It's for the court to conclude.

"[Defense Attorney:] Your Honor, I think it's important for you to know what was on his mind.

"The Court: It's not what he's telling me that is on his mind. There's got to be more than that. I'll sustain the objection.

"Q. What were you trying to do?

"A. Well, I was trying to ruin the blueprints."

under the doctrine of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). We are unpersuaded.

"Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error 'only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' Id., 239–40. The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Crosby,* 34 Conn. App. 261, 264, 641 A.2d 406 (1994). Here, the defendant cannot satisfy the third condition enunciated under *Golding* that he was clearly deprived of a fair trial.

"There is no rule in this jurisdiction which prevents a witness from testifying to relevant facts within his personal knowledge merely because his testimony may be self-serving. Such an extraordinary rule presumably would disqualify as witnesses most parties in civil suits as well as the defendant in a criminal case. General Statutes § 52-145 (a) expressly provides that a 'person shall not be disqualified as a witness in any action because of, (1) his interest in the outcome of the action as a party or otherwise . . . .' We have repeatedly upheld against constitutional challenge an instruction that the jury in weighing the credibility of an accused's testimony may consider his interest in the outcome of the case. *State* v. *Wright,* 198 Conn. 273, 280, 502 A.2d 911 (1985); *State* v. *Frazier,* 194 Conn. 233, 239, 478 A.2d 1013 (1984); *State* v. *Maldonado,* 193 Conn. 350, 366–67, 478 A.2d 581 (1984). This instruction is presupposed by our recognition and acceptance of the fact that

the testimony of an accused may be self-serving. It is the task of the cross-examiner to discredit a witness by exposing his motive or interest in testifying. See, e.g., *State* v. *Ortiz,* 198 Conn. 220, 502 A.2d 400 (1985); *State* v. *Milum,* 197 Conn. 602, 608–609, 500 A.2d 555 (1985). The ultimate issue, credibility, is for the [fact finder], not the court, to decide.

"The governing principle with respect to this issue is that relevant evidence is admissible unless excluded for some reason of policy. 'Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent.' *State* v. *Sharpe,* [195 Conn. 651, 659, 491 A.2d 345 (1985)]; *State* v. *Schaffer,* 168 Conn. 309, 317, 362 A.2d 893 (1975)." *State* v. *Silveira,* 198 Conn. 454, 474–75, 503 A.2d 599 (1986). Here, the defendant's state of mind was relevant to his guilt under § 53a-111 (a) (1). *State* v. *Ramsundar,* 204 Conn. 4, 14, 526 A.2d 1311 (1987). "We have consistently held that mental condition is a fact, and, where relevant to an issue in the case, the witness concerned may testify directly to it. . . . The defendant's testimony as to his prior mental condition was not hearsay because it concerned a fact within his own personal knowledge. His testimony with regard to this fact was no more and no less self-serving than his testimony with regard to any other fact. The trial court erred by excluding it on the ground that it was self-serving." *State* v. *Silveira,* supra, 475–76.

The determination that the trial court acted improperly does not necessarily require reversal of the judgment. Id., 476. The defendant claims that the erroneous rulings deprived him of his right to testify under article first, § 8, of the Connecticut constitution as well as his federal due process rights to present a defense and assistance of counsel.

"With respect to the state constitutional right to testify, we recently stated that *State* v. *King,* [187 Conn.

292, 303–304, 445 A.2d 901 (1982)], where that right was mentioned, 'did not effect any fundamental change in the law.' *State* v. *Wright,* [198 Conn. 273, 280, 502 A.2d 911 (1986)]. We therefore consider the harmfulness of the erroneous rulings under the due process clause. Our inquiry, under the due process clause, is whether the erroneous exclusion of evidence 'was so prejudicial to the rights of the defendant as to deprive him of a fair trial. *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). Stated another way, the question is "whether the claimed erroneous action of the court would have been likely to affect the result." *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976).' *State* v. *Talton,* 197 Conn. 280, 289, 497 A.2d 35 (1985)." *State* v. *Silveira,* supra, 198 Conn. 476–77. Since the excluded evidence reflected the defendant's state of mind at the time that he walked into the trailer, we must look to determine whether the defendant received a fair trial in light of the evidence admitted at trial that related to that issue. See id.

At trial, the defendant testified that, at the time that he entered the trailer, his state of mind "was to go back to work." Further, the defendant testified that his intent was to ruin the blueprints in the office. Thus, given the totality of the evidence, the defendant was able to furnish the fact finder with sufficient evidence of his intent. "In light of the additional evidence pertaining to the defendant's state of mind that was placed before the [fact finder], we do not believe that the erroneous exclusions of evidence deprived the defendant of either his state constitutional right to testify or his federal constitutional right to present an effective defense. Because the erroneous exclusions of evidence do not amount to a constitutional violation, it is the defendant's burden to show that the errors were harmful." Id., 479. In this case, the defendant has not met his burden.

## III

The defendant next claims that the trial court improperly rendered its finding prior to the argument of defense counsel. At the conclusion of all the evidence, prior to closing arguments, the trial court found the defendant guilty of arson in the first degree. Defense counsel, surprised at the finding before argument, stated, "I thought there would be an opportunity for argument." At that point, the trial court reserved its decision until after argument and stated, "I'll listen to your argument." After argument, the trial court rendered a finding of guilty. As the defendant conceded at oral argument, he did not properly preserve this claim by objecting at trial. *State* v. *Carter,* 34 Conn. App. 58, 74, 640 A.2d 610 (1994).[7] On appeal, the defendant, in his brief, does not request review of the claim under *State* v. *Golding,* supra, 213 Conn. 233. The defendant, however, did request *Golding* review at oral argument. Even had the defendant properly requested review under *Golding,* he could not prevail since he cannot satisfy the third requirement that he was clearly deprived of a fair trial.

"Both the Connecticut and the United States constitutions protect a defendant's right to voice closing arguments before the trier of fact. The sixth amendment guarantee in the federal constitution of the right to assistance of counsel has been held to include the right to present closing arguments. *Herring* v. *New York,* 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). Also, article first, § 8, of the Connecticut constitution, which provides that 'the accused shall have a right to be heard by himself and by counsel,' has been

---

[7] "We note that although the amendment to Practice Book § 288 eliminated the requirement that an exception be taken to an adverse ruling by the trial court, it was not amended to eliminate the requirement of an objection being made." *State* v. *Carter,* supra, 34 Conn. App. 74.

held to guarantee a right to present a closing argument. *State* v. *Hoyt,* 47 Conn. 518, 534–37 (1880). The defendant enjoys the same right whether the trial is to a jury or to the bench. *Herring* v. *New York,* supra, 859–60. If the trial court denies the defendant an opportunity to give closing arguments, the reviewing court should grant a new trial. *State* v. *Hoyt,* supra, 536; see also *Herring* v. *New York,* supra [859–60]." *State* v. *Plaskonka,* 22 Conn. App. 207, 210–11, 577 A.2d 729, cert. denied, 216 Conn. 812, 580 A.2d 65 (1990). In the present case, as in *Plaskonka,* the defendant was given an opportunity to present a closing argument but claims that the trial court's announcement of the guilty finding unduly prejudiced him and made the trial unfair.

The *Plaskonka* court stated that since the trial court announced a finding at the close of the evidence, agreed to listen to the oral argument and reduced the penalty after argument, that the defendant received fair consideration. Id., 212. Here, the trial court announced the finding after the defendant rested and then agreed to listen to oral argument. "[W]e presume that it listened with impartiality, and our review of the record discloses nothing to the contrary." Id. Contrary to *Plaskonka,* the trial court here did not change its finding after argument. The fact that the trial court did not change its finding does not, however, dissuade us from concluding that the defendant received a fair trial. The *Plaskonka* court viewed the reduction in penalty as additional evidence to support its conclusion that the defendant received a fair trial. It would be unreasonable for us to require the trial court to change its decision for us to conclude that the defendant received a fair trial. The fact that the trial court did not announce its finding until after all the evidence was presented and also agreed to listen to oral argument is ample evidence to indicate that the defendant received a fair trial. The defendant requests that we adopt a rule that

will result in a finding of a per se constitutional violation under the facts of this case. We decline to do so.

The judgment is affirmed.

In this opinion the other judges concurred.