[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The sole issue raised by the defendant's motion to set aside the jury's verdict in this action[1] is whether a claim for malicious prosecution may be based on the issuance of a speeding ticket. Following comment "a" to Restatement (Second) Torts § 654 and disagreeing with Bonney v. Donnelly, United States District Court, District of Connecticut, No. 3:91CV0022 (AVC) (1995), this court holds that it may.
Viewing the evidence in a light most favorable to sustaining the verdict; Hanauer v. Coscia, 157 Conn. 49, 53, 244
CT Page 12510-R A.2d 611 (1968); Horvath v. Tontini, 126 Conn. 462, 464,11 A.2d 846 (1940); Zimny v. Cooper-Jarrett, Inc., 8 Conn. App. 407,438, 513 A.2d 1235 (1986), cert. denied, 201 Conn. 811,516 A.2d 887 (1986); the jury could have found the following facts. The defendant is a Connecticut State Police Trooper. On the evening of October 2, 1995, the defendant drove himself and two male friends in his state police cruiser to a well-known bar and entertainment establishment in New Haven, Connecticut, named "Toad's Place". At about the same time, the plaintiff transported herself and a female friend to Toad's Place. All of these people were in their twenties or early thirties. While the defendant and his friends were at Toad's Place at the same time that the plaintiff and her friend were there, all parties testified that they did not see each other while at Toad's Place. Still, because of their physical and temporal proximity, the jury could have inferred that the defendant and his friends did see the plaintiff and her companion.
Later in the evening, the defendant and his friends left Toad's Place and walked to a nearby restaurant where they purchased pizza. After eating the pizza, they departed in the defendant's state police cruiser and entered Interstate-95, southbound. While travelling through the Milford, Connecticut area, the defendant observed the plaintiff's vehicle. While the evidence at this point was conflicting as to the defendant's motive, with the defendant and his companions testifying that he merely attempted to cause the plaintiff to slow down her speeding vehicle, the jury was at liberty to believe that the defendant tailgated the plaintiff's vehicle, causing her to exceed the speed limit, pulled his vehicle along side hers, and maneuvered his vehicle in front of the plaintiff's simply to elicit her attention. When he was unable to successfully do so, he pulled back behind her, activated the cruiser's emergency lights in the grille area of his vehicle and caused the plaintiff to drive her vehicle to the shoulder of the highway. The defendant pulled his vehicle over as well. The defendant, dressed in plain clothes, then approached the plaintiff. While the evidence again was conflicting, with the defendant testifying that he conducted himself as he would in any motor vehicle stop, the plaintiff testified that the defendant made a remark to her that could reasonably be interpreted as an advance. Remaining inside of her vehicle, the plaintiff questioned the defendant's being a police officer and sped off. The defendant returned to his vehicle, in which his two companions were still seated, and pursued the plaintiff's CT Page 12510-S vehicle. The defendant pulled the plaintiff over a second time. In this second stop, the defendant emerged from his vehicle with his service revolver drawn. After obtaining the plaintiff's motor vehicle license and registration he returned to his vehicle where he conversed briefly with his companions about what he would do. He indicated that he was only going to give the plaintiff a warning for speeding. At that point, the plaintiff's companion left the plaintiff's vehicle, walked behind the defendant's vehicle, and began transcribing his license plate number. The defendant then exited his vehicle and issued a summons to the plaintiff for speeding. On cross examination, the defendant admitted that at least one reason that he issued the ticket was to "cover his butt." The plaintiff retained an attorney to contest the speeding ticket and expended approximately $1,100 in doing so. The charge eventually was "nolled" and subsequently dismissed.
At the conclusion of the plaintiff's case, the defendant made a motion for directed verdict on the grounds that the plaintiff had failed to establish a prima facie case because an action for malicious prosecution could not be predicated on the issuance of a speeding ticket. The court reserved decision on the motion. The jury, answering special interrogatories, found that the plaintiff had proven by a fair preponderance of the evidence that the defendant had committed the tort of malicious prosecution. The defendant has moved to set aside that verdict, again asserting that since speeding is an infraction and not a crime, an action for malicious prosecution may not be based on the issuance of a speeding ticket.
"An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. Zenik v. O'Brien, 137 Conn. 592, 595, 79 A.2d 769
(1951); Brodrib v. Doberstein, 107 Conn. 294, 296-98, 140 A. 483
(1928); McGann v. Allen, Judicial District of 105 Conn. 177, 185,134 A. 810 (1926); 3 Restatement (Second), Torts (1977) § 653; w. Prosser, Torts (4th Ed. 1971) § 119." McHale v. W.B.S. Corporation,187 Conn. 444, 447, 446 A.2d 815, 817 (1982).
The defendant argues that the first element never was CT Page 12510-T satisfied here. In essence he argues, as did the state in Statev. Guckian, 226 Conn. 191, 198, 627 A.2d 407 (1993), "that our analysis should begin and end with General Statutes § 53a-24, which defines the term `crime' for purposes of the penal code." (Footnote omitted.). Specifically, he asserts that since speeding, for which he issued a ticket to the plaintiff, is not a crime within the Penal Code, the proceedings for enforcement of the ticket undertaken by the prosecutor were not "criminal proceedings". It is true that speeding, a violation of General Statutes § 14-219, is not a crime within the definition of the Penal Code. "The term `crime' comprises felonies and misdemeanors." General Statutes § 53a-24.[2] "An offense for which a person may be sentenced to a term of imprisonment in excess of one year is a felony." General Statutes § 53a-25(a).[3] "An offense for which a person may be sentenced to a term of imprisonment of not more than one year is a misdemeanor." General Statutes § 53a-26.[4] "The term `offense' means any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except — one that defines a motor vehicle violation or is deemed to be an infraction." General Statutes § 53a-24(a). "Every offense which is not a `crime' is a `violation'. Ibid.; seeState v. Kluttz, 9 Conn. App. 686, 691-692, 521 A.2d 178 (1987). The plaintiff was charged with a violation of General Statutes §14-219(c)(1) — operating her vehicle at a speed greater than seventy miles per hour on a multiple lane, limited access highway. While a violation of § 14-219(c) is not characterized as an infraction, as is a violation of General Statutes § 14-219(a) or General Statutes § 14-219(b), the sanction for violating General Statutes § 14-219 is a fine.[5]
Therefore, a violation of General Statutes § 14-219(c) is not a crime but a "violation". General Statutes § 53-27; see State v. Anonymous(1980-8), 36 Conn. Sup. 551, 560, 421 A.2d 867 (App. Sess. 1980). Nonetheless, the court disagrees with the defendant that the issuance of a summons for speeding may not form a predicate for the action of malicious prosecution.
First, the elements of the tort of malicious prosecution, as articulated by our supreme court, refer not to "crimes" but to "criminal proceedings". See McHale v. W.B.S. Corporation,
supra, 187 Conn. 447; Zenik v. O'Brien, supra, 137 Conn. 595. The term "criminal proceeding" is not defined in our law. While General Statutes § 51-164n(e) provides that "a summons for the commission . . . of a violation specified in subsection (b) of CT Page 12510-U this section [which includes speeding § 14-219] shall not be deemed to be an arrest and the commission . . . of any such violation shall not be deemed to be an offense within the meaning of section 53a-24," General Statutes § 51-164n(h) provides: "In any trial for the alleged commission of a violation . . ., the practice procedure, rules of evidence and burden of proof applicable in criminal proceedings shall apply. Any person found guilty at the trial or upon a plea shall be guilty of the commission of a violation. . . ." (Emphasis added.) See State v. Plaskonka, 22 Conn. App. 207, 208-209,577 A.2d 729 (1990), cert. denied, 216 Conn. 812 (1990). This is an indication by the legislature that violations, such as speeding, are to be treated as criminal proceedings. Cf. State v. Knowles,199 Neb. 211, 256 N.W.2d 873, 875 (1977). So too, that the fines to be paid for violations of General Statutes § 14-219 increase in proportion to the severity of the violation; General Statutes § 51-164m(b); is suggestive of a criminal penalty. CompareState v. McCardle, Superior Court, Judicial District of New Haven, No. 782829 (1992 Ct. Sup. 9895) (Nov. 3, 1992) (that "the fine for improper parking in violation of General Statutes §14-251 is a fixed sum, unlike the sanction for speeding in violation of General Statutes § 14-219 which is graduated in proportion to the severity of the violation," held, indicative of a civil fine and not a criminal penalty, for double jeopardy purposes.).
Secondly, importing the Penal Code definition of "crime" into the elements of the tort of malicious prosecution would be inappropriate because the Code and the tort serve different functions and purposes. Malicious prosecution is a common law tort; see 3 Blackstone's Commentaries 126; with origins long predating the development even of that august jurisprudence. See generally, Note, "Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis," 88 Yale L. J. 1218 (1979). It is true that "[i]n other contexts, `our appellate courts have previously used statutes as a useful source of policy for common law adjudication, particularly if there was a close relationship between the statutory and common law subject matters.' Fahy v. Fahy, [227 Conn. 505, 514, 630 A.2d 1328
(1993)]; accord, New England Savings Bank v. Lopez, 227 Conn. 270,281, 630 A.2d 1010 (1993); Hamm v. Taylor, 180 Conn. 491,495, 429 A.2d 946 (1980); Canton Motorcar Works, Inc. v.DiMartino, 6 Conn. App. 447, 453, 505 A.2d 1255, cert. denied,200 Conn. 802, 509 A.2d 516 (1986)." Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 585, 657 A.2d 212 (1995); CT Page 12510-V see Hospital of St. Raphael v. New Haven Savings Bank,205 Conn. 604, 608, 534 A.2d 1189 (1987); Olean v. Treglia,190 Conn. 756, 762, 463 A.2d 242 (1983); Conference Center Ltd.v. TRC, 189 Conn. 212, 225, 455 A.2d 857 (1983). "`Statutes are now central to the law in the courts, and judicial lawmaking must take statutes into account virtually all of the time. . . . More often, the issue is rather to what extent a statute is itself a source of policy for consistent common law development.' E. Peters, `Common Law Judging in a Statutory World: An Address,' 43 U. Pitt. L. Rev. 995, 998 (1982)." Norman Josef Enterprises,Inc. v. Connecticut National Bank, supra, 230 Conn. 501-502; seeGalluzzo v. Board of Tax Review, 44 Conn. Sup. 39, 41-42, ___ A.2d ___ (1995); see generally Calabresi, A Common Law For the Age of Statutes (1982); 2A Sutherland, Statutory Construction (5th Ed.) § 55.01. "`Plainly, every statute has some boundaries, and the question then arises whether, and when, it is appropriate to apply the statute, as a matter of common law, beyond its designated boundaries.' E. Peters, [op cit.] 995, 1005 (1982)." Williams Ford, Inc. v. Hartford Courant Co.,
supra, 232 Conn. 585.
However, our appellate courts have now repeatedly held that "`[w]hat may or may not be a criminal offense for purposes of a particular statutory categorization is not necessarily determinative of whether it is a criminal offense for [other] purposes. . . .' State v. Kluttz, 9 Conn. App. 686, 699,521 A.2d 178 (1987).[6] Thus, in State v. Dukes, 209 Conn. 98,547 A.2d 10 (1988), [the supreme court] concluded that a violation of § 14-215 was a crime for purposes of a search of the defendant's person without reaching the distinct question of whether a violation of § 14-215 is a crime for general classification purposes under § 53a-24 of the penal code. Similarly, the Appellate Court held in State v. Brown,22 Conn. App. 108, 112, 575 A.2d 699, cert. denied, 216 Conn. 811,580 A.2d 61 (1990), that `a violation of . . . § 14-227a was, for purposes of the defendant's conditions of probation, a violation of the criminal laws of this state,' even though a violation of § 14-227a is categorized as a motor vehicle violation and not a crime under § 53a-24. The Appellate Court noted that `whetherthe particular transgression of the law invoked here, which thelegislature has deemed to be noncriminal for purposes of . . . § 53a-24(a), should be regarded, nonetheless, as criminal forpurposes of a condition of probation, depends not on thatcategorization but on the functions and purposes of probation.
Those functions and purposes lead us to conclude that, under the CT Page 12510-W facts of this case, a violation of . . . § 14-227a was, for purposes of the defendant's conditions of probation, a violation of the criminal laws of this state.' Id." (Emphasis added.)State v. Guckian, supra, 226 Conn. 198-199; see State v. Hall,86 Conn. 191, 194, 84 A. 923 (1912) ("To determine whether the case . . . was a criminal case, it is necessary to consider the nature of the [transgression] alleged, the purpose of the action, and the end and object of the statute upon which it is based, as well as the form of the complaint."). More recently, the supreme court in State v. Harrison, 228 Conn. 758,638 A.2d 601 (1994), has held that General Statutes § 14-227a, prohibiting the operation of a motor vehicle while under the influence of intoxicating liquor, is an offense within the meaning of General Statutes § 54-1f which authorizes a police officer to continue immediate pursuit of an offender outside of his jurisdiction to make an arrest for an offense committed within his jurisdiction. Moreover, the Harrison court observed that in Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260,65 L.Ed.2d 228 (1980), the United States Supreme Court had held that a traffic violation could be considered an offense for purposes of double jeopardy analysis. See also Grady v. Corbin,495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). Where the issue is whether Penal Code definitions should be read into another statute, "[w]e do not mechanistically apply penal code definitions to a statute but interpret the language in a manner that implements the statute's purpose." State v. Harrison,
supra, 228 Conn. 763. Where, as here, the issue is whether or to what extent a statutory classification, such as is contained in the Penal Code, should be imported into a common law cause of action, the test is whether to do so would be consonant with the functions and purposes of the common law action and the statute; cf. State v. Guckian, supra, 226 Conn. 199; State v. Brown,
supra, 22 Conn. App. 112; so "`that the body of the law — both commo and statutory — remains coherent and consistent.'"Williams Ford, Inc. v. Hartford Courant Co., supra, 232 Conn. 586, quoting Fahy v. Fahy, supra, 227 Conn. 513-14.
Citing McHale v. W. B. S. Corporation, 187 Conn. 444,446 A.2d 815 (1982), the defendant argues that the tort of malicious prosecution protects the individual's interest in her bodily freedom and in her reputation and that these interests are consistent with the Penal Code's definition of "crime", since an arrest for the alleged commission of a crime may well implicate those interests.[7] Since receipt of a summons for speeding implicates neither interest, argues the defendant, it is not CT Page 12510-X actionable as malicious prosecution.
In McHale v. W. B. S. Corporation, supra, 187 Conn. 447-448, the court did state that "[t]he law governing malicious prosecution seeks to accommodate two competing and ultimately irreconcilable interests. It acknowledges that a person wronglycharged with criminal conduct has an important stake in hisbodily freedom and his reputation, but that the community as a whole has an even more important stake in encouraging private citizens to assist public officers in the enforcement of the criminal law. 1 F. Harper F. James, Torts (1956) 4.11." (Emphasis added.) This court cannot accept the claim that this statement by the McHale court purported to present an exhaustive articulation of the purposes of the common law tort of malicious prosecution. Notably, the second edition of the celebrated treatise cited in McHale states that "in actions for malicious prosecution, it is the interest in freedom from unjustifiable and unreasonable litigation that receives direct and primary protection. Many other interests, of course, are indirectly protected, such as interests in personality; and frequently, in property; and often, but not always, in reputation. But these interests receive only secondary protection. The action for damages lies only because the defendant has set in motion the judicial process against the plaintiff in circumstances that are regarded as improper and unjustifiable and that, therefore, unduly subject the plaintiff to the inconvenience, expense, and in some respects, disgrace of legal proceedings. This is the general type of harm for which the action for malicious prosecution is available." 1 F. Harper, F. James and O. Gray, The Law of Torts (2d Ed. 1986) § 4.2; accord, 8 Speiser, Krause and Gans, The American Law of Torts (1988) § 28:1.[8]
On the other hand, the purpose of the statutory scheme of the Penal Code definitions, including General Statutes §§ 53a-24
to 53a-27, on which the defendant relies, is completely alien to the purposes subserved by the action of malicious prosecution. General Statutes "Sections 53a-24 to 53a-47 deal with the classification of offenses, sentences and sentencing procedure. Unlike prior law, in which virtually every offense carried with it its own authorized sentence, this statutory scheme places each offense within a penalty category — e.g. class A misdemeanor — and provides an authorized sentence for that category. The purpose of this scheme is to eliminate the kind ofirrationally disparate sentences which often existed in priorlaw between essentially similarly serious crimes, andCT Page 12510-Yirrationally similar sentences between crimes of greatly varyingseriousness, and to substitute therefor a system which will, asnearly as is possible, treat essentially the same similarlyserious kinds of conduct." (Emphasis added.) 28 Connecticut General Statutes Annotated (West 1994), Commission Comment — 1971 to chapter 952 of the General Statutes by the Commission to Revise the Criminal Statutes. "While the commission comment hardly has the force of enacted law, it, nevertheless, may furnish guidance." Valeriano v. Bronson, 209 Conn. 75, 94,546 A.2d 1380 (1988). Our appellate courts have frequently referred to comments published by the Commission to Revise the Criminal Statutes as an authoritative source in determining the intent and purpose of penal code provisions.[9]
It would be inappropriate to impress onto a tort, the principal purpose of which is the vindication of freedom from unjustifiable and unreasonable litigation, statutory definitions the principal purpose of which is rational sentencing. Cf. Statev. Guckian, supra, 226 Conn. 199; State v. Brown, supra,22 Conn. App. 112. To import those statutory definitions into the elements of malicious prosecution would create a cavity in that cause of action which has been designed as "part of a comprehensive system for dealing with wrongful litigation. . . ." Note, op cit., 88 Yale L. J. 1229. This would subvert the policy of rendering the body of the law — both common law and statutory — coherent and consistent. Cf. Williams Ford, Inc. v.Hartford Courant Co., supra, 232 Conn. 586. "[W]hat serves to define the commencement of a criminal proceeding for purposes of the law of criminal procedure does not equally serve to define the commencement of such a proceeding for purposes of the law of malicious prosecution." 54 C.J.S., Malicious Prosecution, § 11.
Third, to disallow this cause of action would condone this creation of a fissure and inconsistency in the law of torts forno good reason. What now is referred to in Connecticut as "malicious prosecution" has historically been a segment of jurisprudence which fairly comprehensively dealt with the misuse of legal process. See 52 Am.Jur.2d, Malicious Prosecution, §§1-4. In the first half of this century, the supreme court commented that "[t]he action of malicious prosecution lies where a civil or criminal action has been instituted with malice and without probable cause, and has terminated unsuccessfully. The plaintiff must allege and prove that the original action, whether civil or criminal, was instituted without probable cause, with malice, and that it terminated in his favor." CT Page 12510-Z (Emphasis added.) Schaefer v. O. K. Tool, Co., Inc., 110 Conn. 528,532, 148 A. 330 (1930). Earlier, the supreme court had referred to the tort of malicious prosecution of a civil suit. See Frisbie v. Morris, 75 Conn. 637, 639, 55 A. 9 (1903); Wallv. Toomey, 52 Conn. 35, 36 (1884). More recently, the supreme court has described "[a] vexatious suit [a]s a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suitordinarily implies a prior criminal complaint";(emphasis added)Vandersluis v. Weil, 176 Conn. 353, 356, 407 A.2d 982 (1978); and has characterized the two actions as "kindred torts". Blakev. Levy, 191 Conn. 257, 262, 464 A.2d 52 (1983); see 52 Am.Jur.2d, Malicious Prosecution, § 6. In DeLaurentis v. New Haven,220 Conn. 225, 248-249, 597 A.2d 807 (1991), the court held, citing Restatement (Second), Torts, § 680, that an action for vexatious suit could be based on the favorable termination of a prior proceeding before an administrative board. The DeLaurentis
court catalogued cases from other jurisdictions which, following the Restatement, had held that a variety of administrative, licensing and disciplinary proceedings could form the basis for an action for vexatious suit. On the other hand, where legal process is used primarily for an improper purpose, whether or not it was issued with probable cause, the wrong is remedied by the tort of abuse of process. Mozzochi v. Beck, 204 Conn. 490,494, 529 A.2d 171 (1987); Schaefer v. O.K. Tool Co., supra,110 Conn. 532-533; Lewis Truck Trailer, Inc. v. Jandreau,11 Conn. App. 168, 170-171, 526 A.2d 532 (1987); Restatement (Second), Torts, § 682.
Thus, what is characterized as malicious prosecution is not so much a discrete tort as it is a cause of action existing along a continuum of comprehensive jurisprudence which has evolved over a millennium to protect people from legal proceedings and processes of every species. Note, op cit., 88 Yale L. J. 1221, 1229. There is no rationale for the gap which the defendant asserts exists in this jurisprudence where, out of malice and without probable cause, a person is served with a summons for a "violation" of the law, even though that violation is "only" for speeding, General Statutes § 14-219(c). "The doctrine contended for would be a reproach to the law, and is entirely opposed to all its analogies." Humphrey v. Case,8 Conn. 101, 104 (1830). "`Whatever engines of the law malice may employ to compass its evil designs against innocent and unoffending persons, whether in the shape of indictment or information, which charge a party with crimes injurious to his CT Page 12510-AA fame and reputation, and tend to deprive him of his liberty; or whether such malice is evidenced by malicious arrests, or by exhibiting groundless accusations, merely with a view to occasion expense to the party who is under the necessity of defending himself against them, the action on the case affords an adequate remedy to the party injured.'" (Emphasis in original.) Whipple v. Fuller, 11 Conn. 582, 586 (1836).
With respect to the element of the tort of malicious prosecution which requires that "the defendant initiated or procured the institution of criminal proceedings against the plaintiff"; McHale v. W.B.S. Corporation, supra, 187 Conn. 447; comment "a" to Restatement (Second) Torts, § 654 provides that "[t]he term `criminal proceedings' includes any proceeding in which the state of other government seeks to bring an offender to justice by prosecuting him for a common law or statutory offense and imposing upon him a penalty of a criminal character. The importance of the crime is not material except as it may affect the issue of damages that the accused is entitled to recover in an action for malicious prosecution. Thus, the termincludes proceedings in which the individual is prosecuted forpetty traffic offenses such as overtime parking, and may besubjected to a minor fine." (Emphasis added.)
Vickey v. Nessler, 230 N.J. Super. 141, 553 A.2d 34 (App.Div. 198 9), on which the defendant relies is inapposite. Vickey
was decided by a New Jersey court. New Jersey is among a minority of jurisdictions which, following the English rule, require a plaintiff suing for malicious prosecution to prove "special damages" or "special injury." See 54 C.J.S., Malicious Prosecution, § 6; 52 Am.Jur.2d, Malicious Prosecution, § 10;Vickey v. Nessler, supra, 553 A.2d 36-37. "Special damages entail some arrest of the person, seizure of property or other injury which would not ordinarily result in all civil actions." 54 C.J.S., Malicious Prosecution, § 6.
The court holds that a termination of proceedings favorable to a plaintiff resulting from the receipt of a speeding ticket, a violation of General Statutes § 14-219(c), may be the basis for an action for malicious prosecution.[10] The defendant's motion to set aside the verdict is denied.
BY THE COURT
Bruce Levin Judge of the Superior Court CT Page 12510-BB