STATE OF CONNECTICUT *v.* WILLIAM GUCKIAN
(14577)

PETERS, C. J., BORDEN, BERDON, KATZ and SANTANIELLO, Js.

Argued March 25—decision released June 29, 1993

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, *Robert Katz,* supervisory assistant state's attorney, and *Michael O'Hare,* former deputy assistant state's attorney, for the appellant (state).

*Steven D. Brown,* with whom was *Desiree A. Ralls,* for the appellee (defendant).

BERDON, J. The state appeals from the Appellate Court's determination that the defendant, William Guckian, who pleaded guilty to operating a motor vehicle while his license was suspended in violation of General Statutes § 14-215 (c)[1] and to violating his probation contrary to General Statutes § 53a-32, was eligible for the state's substance abuse treatment program (treatment program). The Appellate Court upheld the portion of the decision of the trial court in favor of the defendant's eligibility. We granted the state's petition for certification and now affirm.

The treatment program, created by No. 89-390 of the 1989 Public Acts (act), is now codified in General Statutes §§ 17a-648 through 17a-658.[2] Pursuant to General Statutes § 17a-650, the trial court may order an examination to determine whether the defendant is alcohol-dependent or drug-dependent and eligible for the treatment program.[3] If the defendant is found eligible for

---

[1] General Statutes § 14-215 (c) provides: "Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a or section 53a-56b or 53a-60d or pursuant to section 14-227b, shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, thirty consecutive days of which may not be suspended or reduced in any manner."

[2] The portions of the treatment program that are relevant to this case include General Statutes §§ 17a-650, 17a-653 and 17a-656. See footnotes 3, 4 and 5.

[3] General Statutes § 17a-650 provides in part: "The court, on its own motion or on motion of the state's attorney or a person charged with a crime

the program, the trial court may suspend prosecution and order alcohol or drug treatment. General Statutes § 17a-653.[4] The court may also order alcohol or drug treatment for a defendant who has already been convicted of a crime, but not yet sentenced. General Statutes § 17a-656.[5]

The following facts are relevant to this appeal. On November 28, 1989, the defendant, William Guckian, pleaded guilty to operating a motor vehicle while under the influence of alcohol in violation of General Statutes § 14-227a (a) and to reckless driving in violation of Gen-

or convicted of a crime but not yet sentenced, may order, if the interests of justice will be served, that such person be examined . . . to determine if the person is alcohol-dependent or drug-dependent and eligible for treatment under section 17a-653 or 17a-656. . . ."

[4] General Statutes § 17a-653 provides in part: "(a) The provisions of this section shall not apply to any person charged with a violation of section 14-227a or 53a-60d or with a class A, B or C felony or to any person who was previously ordered treated . . . . The court may waive the ineligibility provisions of this subsection for any person.

"(b) The court may order suspension of prosecution and order treatment for alcohol or drug dependency as provided in this section and sections 17a-654 and 17a-655 if it . . . finds that (1) the accused person was an alcohol-dependent or drug-dependent person at the time of the crime, (2) the person presently needs and is likely to benefit from treatment for the dependency, and (3) suspension of prosecution will advance the interests of justice. . . ."

[5] General Statutes § 17a-656 provides in part: "(a) The provisions of this section shall not apply to any person convicted of murder, attempt to commit murder, kidnapping, robbery in the first degree or any felony involving serious physical injury or to any person who has been previously ordered to be treated . . . .

"(b) Before sentencing a convicted person, the court may consider any information before it concerning the alcohol or drug dependency of the person, including an examination report made pursuant to section 17a-651. The court may impose a sentence and order treatment as provided in subsection (c) of this section if the court finds that (1) the convicted person was an alcohol-dependent or drug-dependent person at the time of the crime for which he was convicted, (2) there was a relationship between the dependency and the crime, (3) the person presently needs and is likely to benefit from treatment for the dependency, (4) the person is not ineligible under subsection (a) of this section and (5) the person meets the criteria for probation under subsection (c) of section 53a-29."

eral Statutes § 14-222. The defendant was sentenced to concurrent terms of six months on each count, execution suspended and probation for one year. In addition, the defendant's motor vehicle operator's license was suspended for one year. These convictions are not presently at issue.

The defendant was subsequently charged with operating a motor vehicle while his license was suspended in violation of § 14-215 (c) and with violating his probation contrary to § 53a-32. The defendant was released from custody on a promise to appear on the condition that he participate in a substance abuse counseling program called Neon. Neon personnel referred the defendant to another treatment program at the Meriden Center. The Meriden Center counselors determined that the defendant needed residential treatment for his alcohol dependency and recommended Berkshire Woods Treatment Center. The defendant voluntarily entered Berkshire Woods Treatment Center on May 8, 1990. After successfully completing the treatment program, he was discharged on August 3, 1990.

On August 16, 1990, the defendant appeared before the trial court, *Bingham, J.,* and moved for an examination for drug or alcohol dependency pursuant to § 17a-650. The state objected, arguing that the defendant, having been charged with a motor vehicle violation as opposed to a crime, was not eligible for treatment under the act. The trial court overruled the state's objection, granted the defendant's motion and ordered an evaluation.

After a hearing on August 23, 1990, the trial court concluded that the legislature intended the term "crime," as used in the act, to include motor vehicle violations. The trial court noted that in § 6 of the act, now codified in § 17a-653, the legislature had specifically excluded persons charged or convicted of driv-

ing under the influence of drugs or alcohol pursuant to § 14-227a. The court determined that "there would be no reason to mention an exemption of § 14-227a in Section 6" if the term "crime," as used in the act, did not include motor vehicle violations.

After the defendant pleaded guilty to both charges on August 23, 1990, the trial court found that (1) the defendant was alcohol-dependent when he was charged with driving while his license was suspended, (2) there was a sufficient relationship between the defendant's alcohol dependency and the crime charged, and (3) the defendant needed and was likely to benefit from treatment. The trial court therefore concluded that the defendant was eligible for participation in the treatment plan pursuant to § 17a-656. Consequently, the trial court sentenced the defendant to six months imprisonment, suspended after thirty days with eighteen months probation.[6] The trial court also ordered, as a condition of probation, that the defendant submit to alcohol evaluation and treatment as deemed necessary by the probation department.

With the trial court's permission, the state appealed to the Appellate Court, which upheld the trial court's conclusion that a violation of § 14-215 (c) is a crime for purposes of the act. *State* v. *Guckian,* 27 Conn. App. 225, 238, 605 A.2d 874 (1992). The Appellate Court also concurred in the trial court's determination that § 17a-656 (b) does not require the defendant to show a contributory or causal link between the defendant's drug or alcohol dependency and the crime committed. Id., 242–43. The Appellate Court concluded, however, that a remand was required for other matters not germane to the issues raised in this appeal. Id., 247.

---

[6] The defendant's license was suspended pursuant to General Statutes § 14-215 (c) which mandates a prison term of at least thirty days. The treatment program does not permit the trial court to dispense with mandatory minimum sentences after conviction. See General Statutes § 17a-656 (g).

We granted the state's petition for certification limited to the following questions: "(1) Did the Appellate Court properly determine that the term 'crime' as used in Public Acts 1989, No. 89-390 [now codified in §§ 17a-648 through 17a-658] includes motor vehicle violations? (2) Did the Appellate Court properly determine that the requirement of Public Acts 1989, No. 89-390 that there be a 'relationship' between the alcohol or drug dependency and the crime committed does not require a showing of a causal or contributory link between the dependency and the crime?" *State* v. *Guckian,* 223 Conn. 907, 612 A.2d 57 (1992). We affirm the judgment of the Appellate Court.

## I

The state argues that the defendant is not eligible for the treatment program because he was charged with a violation of § 14-215 (c), which is a motor vehicle violation and not a crime. Under § 17a-650, "[t]he court, on its own motion or on motion of the state's attorney or a person *charged with a crime or convicted of a crime* but not yet sentenced, may order, if the interests of justice will be served, that such person be examined . . . to determine if the person is alcohol-dependent or drug-dependent and eligible for treatment . . . ." (Emphasis added.) Under § 17a-656 (b), the court may order alcohol or drug treatment for a convicted person who was alcohol-dependent or drug-dependent *"at the time of the crime for which he was convicted."* (Emphasis added.) In this case, the defendant was admitted to the treatment program pursuant to § 17a-656.

The narrow question before us is whether the term "crime," as used in the treatment program statute, includes motor vehicle violations. The term "crime" is not defined in the statutory sections that establish the treatment program, nor is it defined in chapter 319j

(alcohol and drug abuse) or title 17a (social and human services and resources) of the General Statutes, in which the treatment program is codified. Generally, when a statutory term is not defined, we focus on its ordinary meaning. General Statutes § 1-1. The term "crime" is ordinarily so broadly defined, however, that its common meaning is not instructive in determining whether the statutory term "crime" includes motor vehicle violations.[7]

In the absense of an instructive definition of the term "crime" for purposes of determining whether an individual is eligible for the treatment program, we must construe the statute in accordance with the legislature's intent and purpose in drafting the legislation. "[T]he fundamental objective of statutory construction is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Warkentin* v. *Burns,* 223 Conn. 14, 20, 610 A.2d 1287 (1992).

The state argues that our analysis should begin and end with General Statutes § 53a-24, which defines the term "crime" for purposes of the penal code.[8] We disagree. "What may or may not be a criminal offense for purposes of a particular statutory categorization is not necessarily determinative of whether it is a criminal offense for [other] purposes . . . ." *State* v. *Kluttz,* 9 Conn. App. 686, 699, 521 A.2d 178 (1987).[9] Thus, in

---

[7] A crime is defined as "an act or the commission of an act that is forbidden . . . ." Webster's Third New International Dictionary.

[8] General Statutes § 53a-24 (a) provides in part: "The term 'offense' means any crime or violation which constitutes a breach of any law of this state . . . for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term 'crime' comprises felonies and misdemeanors. Every offense which is not a 'crime' is a 'violation.' . . ."

[9] In *State* v. *Kluttz,* 9 Conn. App. 686, 698–99, 521 A.2d 178 (1987), the Appellate Court held that although a violation of General Statutes § 14-222a, negligent homicide with a motor vehicle, was a motor vehicle violation rather

*State* v. *Dukes,* 209 Conn. 98, 547 A.2d 10 (1988), we concluded that a violation of § 14-215 was a crime for purposes of a search of the defendant's person without reaching the distinct question of whether a violation of § 14-215 is a crime for general classification purposes under § 53a-24 of the penal code. Similarly, the Appellate Court held in *State* v. *Brown,* 22 Conn. App. 108, 112, 575 A.2d 699, cert. denied, 216 Conn. 811, 580 A.2d 61 (1990), that "a violation of . . . § 14-227a was, for purposes of the defendant's conditions of probation, a violation of the criminal laws of this state," even though a violation of § 14-227a is categorized as a motor vehicle violation and not a crime under § 53a-24. The Appellate Court noted that "whether the particular transgression of the law invoked here, which the legislature has deemed to be noncriminal for purposes of . . . § 53a-24 (a), should be regarded, nonetheless, as criminal for purposes of a condition of probation, depends not on that categorization but on the functions and purposes of probation. Those functions and purposes lead us to conclude that, under the facts of this case, a violation of . . . § 14-227a was, for purposes of the defendant's conditions of probation, a violation of the criminal laws of this state." Id.

In construing the term "crime," we turn to the legislative history and the circumstances surrounding its enactment to ascertain the legislature's purpose in establishing the treatment program. *State* v. *Mattioli,* 210 Conn. 573, 576, 556 A.2d 584 (1989). "Although statements made on the floor of the legislature are not

---

than a crime, it could be considered a crime for purposes of the lesser included offense doctrine. "Whether the lesser included offense doctrine should apply to include a transgression of the law which the legislature has categorized for certain purposes as noncriminal depends, not on that categorization, but on the functions and purposes of the doctrine itself. We conclude that negligent homicide with a motor vehicle is an offense for purposes of the lesser included offense doctrine." Id., 699.

controlling on statutory interpretation, we may take judicial notice of those statements, which are strong indications of legislative intent." *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 310–11, 592 A.2d 953 (1991). A review of the legislative history of the act reveals that it was adopted to provide "new programs, new initiatives, new ideas, [and] consolidation of some programs in the effort to combat drugs in the state of Connecticut." 32 S. Proc., Pt. 11, 1989 Sess., p. 3630, remarks of Senator John C. Daniels. As part of this new initiative, the legislature sought to provide "a drug [or alcohol] rehabilitation system for people who come into the criminal justice system." 32 H.R. Proc., Pt. 40, 1989 Sess., p. 14,288, remarks of Representative Richard D. Tulisano. The legislature also afforded the trial court greater discretion in recommending and ordering substance abuse treatment. "Currently in our system, we have something similar to this, but it's not being used, because prosecutors have a veto power over it. . . . So, we've given the judges some discretion. The prosecutors can recommend this, but also, now, the judges can." 32 S. Proc., Pt. 11, 1989 Sess., pp. 3637–38, remarks of Senator Anthony V. Avallone.

These statements demonstrate that the legislature sought to provide greater access to treatment by making substance abuse treatment readily available and by giving the trial court the power to allow qualified persons to participate in the program. We conclude from the legislative history that the statutory scheme is remedial in nature and as such must be "liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *State* v. *Anderson,* 220 Conn. 400, 404, 599 A.2d 738 (1991).

In discussing the statutory scheme, Senator Avallone made it clear that the act sought "to give the court discretion, *in less serious cases,* misdemeanors and class

D felonies, to suspend prosecution in drug and alcohol treatment [cases], to give people an opportunity, those who have not yet been tried, and those who have been tried and found guilty, but have not yet been sentenced, an alternative to jail, for treatment programs." (Emphasis added.) 32 S. Proc., Pt. 11, 1989 Sess., p. 3635. Indeed, § 17a-653 (b) gives the trial court the power to waive the ineligibility provisions for persons charged with class A, B or C felonies, and violations of General Statutes § 14-227a (operating a vehicle while under the influence of drugs or alcohol) and § 53a-60d (assault in the second degree with a motor vehicle).

Given the remedial purpose of the statutory scheme, it stands to reason that an individual who has been charged with driving while his license was suspended, in violation of § 14-215 (c), is eligible for the treatment program. "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *Warkentin* v. *Burns,* supra, 20. We agree with the Appellate Court's conclusion that a violation of § 14-215 (c) is a "crime" for purposes of §§ 17a-648 through 17a-658.

Our conclusion is further supported by the fact that the legislature specifically excluded from the statutory scheme persons charged with § 14-227a, which is a motor vehicle violation. General Statutes § 17a-653. If motor vehicle violations were not crimes for purposes of the act, there would be no need specifically to exclude § 14-227a. Furthermore, in § 17a-656, the legislature specifically excluded certain convicted persons from participation in the treatment program. The legislature excluded from § 17a-656 *only* persons convicted of murder, attempt to commit murder, kidnapping, robbery in the first degree, any felony involving serious physical injury, or persons previously treated. "Unless there is evidence to the contrary, statutory itemization indi-

cates that the legislature intended the list to be exclusive." (Internal quotation marks omitted.) *State* v. *Kish*, 186 Conn. 757, 766, 443 A.2d 1274 (1982). As a result, it is reasonable to conclude that the legislature intended that the word "crime" incorporate motor vehicle violations. We conclude that a violation of § 14-215 (c) is a "crime" for purposes of qualifying for the treatment program under §§ 17a-648 through 17a-658.

## II

In its second claim, the state challenges the Appellate Court's conclusion that the term "relationship," as used in § 17a-656 (b) does not require the defendant to show a causal or contributory link between the dependency and the crime. Section 17a-656 (b) provides that "[t]he court may impose a sentence and order treatment . . . if the court finds that . . . (2) there was a relationship between the dependency and the crime . . . ." The term "relationship" is not defined within the statutory scheme. Accordingly, we must " 'focus upon its common understanding as expressed in the law and upon its dictionary meaning.' . . . 'In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language. . . .' General Statutes § 1-1 (a)." (Citation omitted.) *Builders Service Corporation, Inc.* v. *Planning & Zoning Commission,* 208 Conn. 267, 276, 545 A.2d 530 (1988).

A "relationship" is "the state or character of being related or interrelated: a connection by way of relation." Webster's Third New International Dictionary. Black's Law Dictionary (5th Ed. 1979) defines "related" as "connected." See also *Bolt Technology Corporation* v. *Commissioner of Revenue Services,* 213 Conn. 220, 228, 567 A.2d 371 (1989). Thus, the statutory requirement of a "relationship" between the dependency and the crime calls for some logical associ-

ation or connection between the two. It does not, however, require that the connection be causal in nature. If the legislature had intended to place such a burden on the defendant, it would have specified that the court is required to find a *causal* relationship or a *causal* connection between the dependency and the crime. We conclude that although the statute requires a connection between the defendant's alcohol or drug dependency and the crime committed, it does not require a showing of a contributory or causal link. Our conclusion gains further support from the legislature's liberal intention, as set forth in part I, to provide drug or alcohol treatment when reasonably possible.

Finally, we find ample support in the record for the trial court's finding that the defendant's alcohol dependency was related to his violation of § 14-215 (c). In its articulation, the trial court outlined the following facts to support its finding of a relationship between the defendant's alcohol dependency and his violation of § 14-215 (c). The trial court found that when the defendant was arrested for driving while his license was suspended, he was on probation for driving under the influence of alcohol. His license had been suspended as a result of his driving under the influence of alcohol. In addition, the trial court found that the defendant had been admitted to Berkshire Woods Treatment Center from May 8, 1990, until August 3, 1990, and that he was an alcohol-dependent person during that time. Moreover, the trial court relied on testimony from Kenneth Hodge, a counselor at Neon, who testified that the defendant, as an alcoholic, had a continuing need for treatment. We agree with the trial court and the Appellate Court that this evidence furnished an ample foundation for the trial court's finding of a "relationship" between the defendant's alcohol dependency and his violation of § 14-215 (c).

The judgment is affirmed.

In this opinion PETERS, C. J., KATZ and SANTANIELLO, Js., concurred.

BORDEN, J., concurring in part and dissenting in part. I agree with part I of the majority opinion, and with so much of part II as defines the relationship between the preexisting dependency and the crime with which the defendant now stands charged, namely, "some logical association or connection" between the dependency and the crime committed. Even under that broad standard, however, I fail to see any logical connection between the two in this case.

The defendant is alcohol-dependent, and has been so for some period of time. He is now charged with the crime of driving under suspension. The support that the majority marshals for the trial court's finding of a logical connection between his dependency and the crime with which he now stands charged amounts to the facts that: (1) he was alcohol-dependent when he was first put on probation for driving under the influence; and (2) he is still alcohol-dependent and in need of treatment. There is nothing in these facts that supports a logical connection between his preexisting dependency and his present criminal conduct. If all that is needed to establish such a connection is that the defendant is still dependent, then the factor of a logical connection between the two becomes superfluous, because that will always be the case.

The only other possible connection that I can divine from the majority opinion is that the defendant's previous crimes were motor vehicle offenses and his current crime is also a motor vehicle offense. That does not seem to me what the legislature meant by a "relationship" between the defendant's dependency and his current crime. There must be something in the facts of the defendant's current criminal conduct that relates

logically to his dependency, more than the fact that he is now charged with the same type of crime that he had committed before.

I therefore dissent, and would reverse the judgment of the Appellate Court.