[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINDINGS ON PETITION FOR TERMINATION OF PARENTAL RIGHTS
This is a petition for the termination of parental rights. With respect to the respondent mother, Carrie R., the petition is now based on her consent to the termination.[1] With respect to the respondent father, Sylvanus C., the petition is based on his failure to rehabilitate.
The following facts are found. Steven, the child who is the subject of these proceedings, was born to the respondents on June 10, 1998. At the time of his birth his parents were both twenty years of age and unmarried. On June 12, 1998, the Department of Children and Families (DCF) invoked a 96-hour hold on Steven. An order of temporary custody was subsequently sought, granted on June 15, 1998 and sustained on June 26, 1998 after the opportunity for a hearing. On October 8, 1998, Steven was adjudicated uncared for and was committed to custody of DCF. On November 5, 1999, DCF filed a petition to terminate the respondents' parental rights. A hearing was held on the petition on November 13, 2000.
 I
The respondent mother has at all relevant times been represented by competent counsel. Prior to commencement of the hearing on the petition, the respondent mother, before her attorney, subscribed and swore to an affidavit of consent to the petition. In the presence of her counsel, the court canvassed the respondent mother. Based on the respondent mother's appearance and her answers to the court's inquiries, the court finds by clear and convincing evidence that the respondent mother, who had previously reviewed the issue of consent with her attorney, has knowingly CT Page 14121 and voluntarily consented to the termination of her parental rights with a full understanding of the legal consequences of such an act. The court accepts the consent.
Based on DCF's social studies and the two addenda to those social studies, all of which had previously been marked as full exhibits, the court further finds by clear and, convincing evidence that termination of the respondent mother's parental rights is in Steven's best interests.
 II
At the time of trial, the father's attorney advised the court that the father had executed a written consent to the petition but, based on a telephone conversation he had just had with him, the father did not wish to come to court. The father's attorney initially offered to have the written consent marked as an exhibit. The offer was withdrawn because of a concerns expressed by Steven's attorney. However, the court accepted the representations of the father's attorney as some evidence with respect to whether termination was in the child's best interests. Cf.State v. Nguyen, 253 Conn. 639, 657, ___ A.2d ___ (2000) (court entitled to credit the truth of defense counsel's assertions of acts in which he participated and to rely on them in support of findings); State v.Williams, 203 Conn. 159, 169, 523 A.2d 1284 (1987) ("Attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.")
Based on clear and convincing evidence, the court finds that (1) DCF has made reasonable efforts to locate the father and to reunify the Steven with his father (2) that termination is in Steven's best interest and (3) that Steven was adjudicated uncared for on October 8, 1998, the father was provided specific steps to take to facilitate the return of Steven to him, pursuant to section 46b-129, and the father has failed to achieve such degree of personal rehabilitation as would encourage the belief, as of November 5, 1999 when this petition was filed, that within a reasonable time, considering the age and needs of Steven, he could assume a responsible position in Steven's life.
 Mandatory Findings
General Statutes § 17a-112 (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) CT Page 14122 whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."
1. (Finding regarding the timeliness, nature and extent of servicesoffered, provided, and made available to the parent and the child by achild-placing agency to facilitate the reunion of the child with theparent.)
Soon after Steven's birth, his parents were offered services by the Visiting Nurses Association and Intensive Family Preservation.
The respondent father was continuously been afforded weekly visitation with his son Steven until recently when the visits were changed to b-weekly. Kidsafe provided transportation and supervision of visitation at their facility in Rockville, Ct. Kidsafe also provided parenting education during these visits. The respondent was referred by DCF to Manchester Memorial Hospital for parenting classes. Family and individual counseling was provided by Jewish Family Services. A substance abuse evaluation was conducted by Genesis Center. The respondent father was offered Anger Management classes because of his history of domestic violence. Supervised visitation with some parenting education also was offered through AMPS.
2. (Finding regarding whether DCF has made reasonable efforts toreunite the family pursuant to the Federal Child Welfare Act of 1980, asamended.)
CT Page 14123
The court finds that DCF made reasonable efforts to reunite the family.
3. (Finding regarding the terms of any applicable court order enteredinto and agreed upon by any individual or child-placing agency and theparent, and the extent to which all parties have fulfilled theirobligations under such order.)
On June 18, 1998, contemporaneously with the sustaining of the order of temporary custody in this matter, the respondents were instructed to: (1) keep all appointments set by or with DCF and to cooperate with DCF home visits, announced or unannounced, (2) keep whereabouts known to DCF and your attorney; (3) visit the child as often as DCF permits, (4) participate in parenting counseling, (5) submit to substance abuse assessment and follow recommendation regarding treatment; (6) accept and cooperate with in home support services referred by DCF, (7) sign releases authorizing DCF to communicate with service providers to monitor attendance, cooperation and progress, (8) secure and maintain adequate housing and legal income, (9) no substance abuse, (10) no involvement with the criminal justice system.
As of the date of the filing of the petition, the respondent father had generally complied with these instructions. This, however, is far from dispositive. See In re Passionique T., 44 Conn. Sup. 551, 564,695 A.2d 1107 (1996). His visitation of Steven was not consistent. The father did leave the state without informing DCF that he was leaving, where he was going or when he was returning. Subsequent to the filing of the petition, the respondent was discontinued from Jewish Family Services for noncompliance and failure to appear for appointments. He also has not appeared for visitation at AMPS for the past two months.
4. (Finding regarding the feelings and emotional ties of the child withrespect to the child's parents, any guardian of the child's person andany person who has exercised physical care, custody or control of thechild for at least one year and with whom the child has developedsignificant emotional ties.)
Steven has very little emotional tie to either respondent. Although he is reported to have strong emotional ties to his foster parents, he has been in their care only since August, 2000.
5. (Finding regarding the age of the child.)
Steven is two years of age. When he was younger, there was a concern that he had a flat affect. CT Page 14124
6. (Finding regarding the efforts the parent has made to adjust suchparent's circumstances, conduct or conditions to make it in the bestinterest of the child to return the child to the parent's home in theforeseeable future, including, but not limited to: (A) the extent towhich the parent has maintained contact with the child as part of aneffort to reunite the child with the parent; provided the court may giveweight to incidental visitations, communications or contributions, and(B) the maintenance of regular contact or communication with the guardianor other custodian of he child.)
The respondent father has not made sufficient progress in his parenting abilities. He has a history of domestic violence which recurred on August 23, 2000. His judgment and the actual care he provided Steven were inadequate. His apartment was unsanitary. Subsequent to the filing of the petition, his housing and employment situation became unstable. He does not wish to parent Steven, as evidenced by his execution of consent form for the termination of his parental rights.
7. (Finding regarding the extent to which a parent has been preventedfrom maintaining a meaningful relationship with the child by theunreasonable act or conduct of the other parent of the child, or theunreasonable act of any other person or by the economic circumstances ofthe parent.)
The term "meaningful relationship" is not defined in the statutes nor, in the context of General Statutes § 17a-112, in the case law. "Accordingly, we must focus upon its common understanding as expressed in the law and upon its dictionary meaning. . . . In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language. General Statutes § 1-1 (a)." (Citation omitted; internal quotation marks omitted.) State v. Guckian,226 Conn. 191, 202, 627 A.2d 407 (1993); Builders Service Corporation,Inc. v. Planning Zoning Commission, 208 Conn. 267, 276, 545 A.2d 530
(1988); Baerst v. State Board of Education, 34 Conn. App. 567, 576,642 A.2d 761, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994). The word "meaningful" has been defined as "Having a meaning or purpose . . . full of meaning." Webster's Ninth New Collegiate Dictionary (1991). "Relationship" has been defined as "the state of being related or interrelated . . . the relation connecting or binding participants in a relationship as . . . kinship . . . a specific instance or type of kinship. . . ." Id.; see State v. Guckian, supra, 226 Conn. 202.
Thus, the term "meaningful relationship" in General Statutes §17a-112 (d) calls for a connection between the parent and child. Cf.State v. Guckian, supra, 226 Conn. 202. In addition, "under the maxim of CT Page 14125 `noscitur a sociis," the meaning of a particular word or phrase in a statute is ascertained by reference to those words or phrases with which it is associated." Staples v. Palten, 214 Conn. 195, 199, 571 A.2d 97
(1990). In determining the meaning of the phrase "meaningful relationship" the court must not ignore the reality that it is a termination of parental rights statute that we are interpreting. "It is a basic tenet of statutory construction that the intent of the legislature is to be found not in an isolated phrase or sentence but, rather, from the statutory scheme as a whole. . . . Therefore, [a] statute should be read as a whole and interpreted so as to give effect to all of its provisions." Figueroa v. C and S Ball Bearing, 237 Conn. 1, 6, 675 A.2d 845
(1996), and cases cited therein. Applying these principles, the court holds that the term "meaningful relationship" must be understood in the context of the parent-child relation. This interpretation, moreover, is consistent with the mandate of General Statutes (Rev. 1999) § 17a-112
(i) that "[t]he provisions of this section shall be construed in the best interests of any child for whom a petition under this section has been filed."
"While the [father's] means are clearly very limited, the record does not support the conclusion that [his] limited means — as opposed to [his] other problems — have interfered with [his having a meaningful] relationship with [his] child." In re Kevin M., Superior Court, Judicial District of Hartford-New Britain at Hartford (Nov. 14, 1994)
The petition is granted as to both respondents. The court terminates the respondents' parental rights. It is further ordered that the Commissioner of the Department of Children and Families is appointed statutory parent for Steven for the purpose of securing a permanent adoptive family. If the foster parents are willing to adopt, as the DCF social worker so testified, it is the court's order that these foster parents receive first consideration. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
Dated at Middletown this 15th day of November, 2000.
Bruce L. Levin Judge of the Superior Court