******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* AARON BRANTLEY
(AC 37123)

Keller, Mullins and Lavery, Js.

*Argued November 18, 2015—officially released April 12, 2016*

(Appeal from Superior Court, judicial district of New Haven, B. Fischer, J.)

*Daniel P. Scholfield*, with whom was *Hugh F. Keefe*, for the appellant (defendant).

*Nancy L. Walker*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Stacey Miranda*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. After a trial to the court, the defendant, Aaron Brantley, was convicted of one count of bribery of a witness in violation of General Statutes § 53a-149. The defendant now appeals, claiming that there was insufficient evidence to sustain his conviction. We affirm the judgment of the trial court.

At the conclusion of the defendant's trial, the court, *B. Fischer, J.*, made the following findings of fact: "[The defendant] is thirty-four years old, he's been a firefighter for approximately ten years. He was injured at work in 2011. He injured his shoulder. He was put on restrictions of light duty for a period of time, off and on . . . . He did have surgery as I recall in December of . . . 2011 . . . . He did file a workers' compensation case in conjunction with his work related injury and he alleged in the summer of [2012], which is in evidence, that . . . [Assistant Chief Patrick] Egan interfered inappropriately in his comp[ensation] case by going to the doctor's office . . . . [A]nd this court does make a finding that . . . within [the claim] that his . . . attorney . . . then filed [with the Commission on Human Rights and Opportunities (CHRO)][1] . . . [the] request for relief concerning the actions of . . . Egan, the inappropriate actions, discriminating against an employee with a workers' comp[ensation] case . . . [sought an award of] damages or potential awarding of damages to the defendant. The defendant in June of 2012 alleged in a twelve page affidavit, which was part of his CHRO complaint, and the complaint consists of forty-three separate paragraphs in his affidavit which goes into great detail about his allegations of racial discrimination and other discrimination imposed upon him by . . . Egan and others at the . . . New Haven Fire Department and the city of New Haven . . . ."[2]

The court also made the following findings of fact: "[Corey] Bellamy has been a New Haven firefighter for . . . nine or ten years. He is friends with [the defendant]. They had a good relationship. There were some phone calls . . . between the two in June [2012], I don't know the extent of those phone calls but there were phone calls there. The defendant at a point in time did tell Mr. Bellamy about a pending lawsuit he has or was preparing with the assistance of his attorney against the city of New Haven, and specifically . . . Egan and some others in the city of New Haven and the fire department. On August 24, 2012, Mr. Bellamy did go to the New Haven Police Department and gave a statement concerning this matter to Detective [Lynn] Meekins of the New Haven Police Department. . . .

"The statement that he gave was close in time to the events of June and July [of] 2012. The statement was given in a reliable setting, it was given in the New Haven Police Department and it was given to a police officer.

And . . . Bellamy should know, or would have known that giving a false statement to a police officer is a crime and he could have been arrested for a felony if it was proven that he gave a false statement to police.

"Now, what Mr. Bellamy did when he came in front of this judge to testify in this trial is he got on the stand and he raised his right hand and he told me that everything he told the police back [o]n August 24, 2012, was a lie. . . . [A]s far as [a] bribe or alleged bribe he indicated to this court that everything he said was a lie. . . .

"I don't find that credible. I do find credible what he gave in his statement to the police department [o]n August 24, 2012. And what that statement indicates and I find . . . is that he was present when Assistant Chief Egan asked the defendant to put gas in his truck or car, that the defendant didn't like this order from Egan, and eventually what happened shortly after that, again . . . we're not good on the dates, but shortly after that the defendant offers to . . . Bellamy 2 or 3 percent of [any] potential proceeds of a lawsuit to tell courts or attorneys the situation that happened with Assistant Chief Egan, and this was done on the phone. Several days after that firefighter Bellamy then goes to his supervisor . . . [Faustino] Lopez, and he indicates to . . . Lopez that the defendant . . . offered him 2 to 3 percent that he would give to Bellamy [because] he was supposed to get a chunk of money if this lawsuit works out.

"So [Bellamy] was consistent with his comments to Lopez, the phone call that he received from the defendant, and he was consistent when he told the police, in this court's opinion, his statement on August 24, 2012. . . .

"Lopez . . . is friends with the defendant . . . . There were numerous calls in June [2012] initiated by the defendant to him in a two week period of time. . . . [B]ellamy reported to . . . Lopez that the defendant did give—offered to give him 2 or 3 percent of proceeds of a claim against Egan and the city of New Haven.

"[Lopez] was a witness to an incident where . . . Egan had asked the defendant . . . and . . . Lopez at some time at work where they were going, so Lopez was there present for that episode. [The defendant] did take some offense to that inquiry by [Egan] concerning the question about where they were going. The defendant then offers Lopez the same 2 to 3 percent payout of the proceeds or payout of a claim, claimed lawsuit, or proceeds from litigation. . . . Lopez declines this offer.[3] Subsequent to that the defendant then calls up Lopez on the phone and he asks him to reconsider the 2 to 3 percent payout. Again, Lopez declines that. In late June . . . Lopez [has] a brief meeting with . . . Egan.

"And I'm going to read from [the state's] Exhibit [2] concerning evidence that I am discussing, and I'm on page ten . . . which says as follows, and . . . this is Lopez' statement: 'Something coming up real soon, that was imminent, as far as a lawsuit, and maybe something was going to take place in the media and that [the defendant] wanted . . . me to testify in his behalf, even after I told him that I didn't have any evidentiary value for the testimony 'cause I didn't believe he was harassed at that time. And he, that's why he approached me with the monetary percent and said, "If you were to kind of alter your testimony I will pay you to do that." ' . . . And on page twelve of the. . . statement it goes as follows: 'He wanted to include me in that and he wanted me to testify. Once I told him I didn't believe it was that there—that there was a way that I wouldn't have anything to offer. That's when he said, well, what if I give you—what if I give you 2 or 3 percent, whatever you want of any monetary settlement I get from the case that I'm going to file, coming up pretty soon.' The detective then [asked] did he suggest to you [what] he wanted you to say, and this is Lopez' response: 'Yes, he said that he wanted me to say that he believed that he was being harassed by Chief Egan, [and] that I felt that it was a direct harassment, [and] that I [didn't] really get asked those questions by Chief Egan, where I was going and what I was doing. That's what he wanted me to basically say.'

"So we have testimony from two of the defendant's friends, Lopez and Bellamy, that the defendant offered a benefit to them to testify on his behalf. There is no motive or bias that either of these witnesses have against the defendant . . . there's no reason that this court finds that they would fabricate the story. It's not like . . . Egan came in here and said that, where there's obviously, to say the least, hard feelings between [him and the defendant] . . . . But what we have in front of this court is two individuals with, in this court's opinion, no axe to grind, who were . . . approached by the defendant on separate dates and offered the same benefit to testify in official proceedings by the defendant, again, with no axe to grind.

* * *

"I don't find credible at all that [the defendant] did not offer a monetary benefit to witnesses Bellamy and Lopez."[4]

After making these findings, the court concluded that the state had proved both that Bellamy and Lopez were witnesses in an official proceeding and that the defendant had offered each a benefit. With regard to the offer of a benefit, the court found that "the defendant offered to both witnesses Bellamy and Lopez . . . a 2 to 3 percentage share of any proceeds the defendant would receive from the defendant's legal claims against the

city of New Haven and . . . Egan . . . ."

As to whether the state had proved that the defendant intended to influence testimony, the court found that the state had carried its burden as to Lopez only. "[T]he defendant requested that the witness . . . Lopez alter his testimony and that the defendant would pay him to do it concerning alleged harassment by . . . Egan. Therefore, as to this count the court finds that the state has met its burden of proof beyond a reasonable doubt that the defendant specifically intended to influence the testimony of Mr. Lopez. So as to count two this court makes a finding of guilty."

On August 1, 2014, the court denied the defendant's motion for a new trial and his motion to vacate his conviction and for a judgment of acquittal. On the same date, the court imposed a sentence of one year of imprisonment, execution suspended after nine months, and one year of conditional discharge. This appeal followed.

On appeal, the defendant claims that there was insufficient evidence to sustain his conviction. His claim is twofold.

First, he argues that the sufficiency of the evidence standard applied by reviewing courts of this state denies a defendant due process of law because it permits the affirmance of a conviction so long as there is "some evidence" supporting each element of the crime and, consequently, renders toothless the concept of reasonable doubt.[5]

Second, he argues that there was insufficient evidence in the present case to sustain the trial court's findings that the state proved beyond a reasonable doubt (1) that he specifically intended to influence Lopez' testimony and (2) that he offered Lopez a benefit.

I

The defendant first claims that the sufficiency of the evidence standard that reviewing courts of this state apply is too malleable to guard adequately a defendant's due process right not to be convicted except upon proof beyond a reasonable doubt.[6] He argues that under the existing standard, rather than review the evidence to ensure that it proves each element of a charged offense beyond a reasonable doubt, an appellate court invariably will uphold a conviction so long as there is some evidence to support each element of that offense. He appears to argue that we should reformulate this standard to protect more adequately the requirement of proof beyond a reasonable doubt. We are unpersuaded, and, in light of Supreme Court precedent binding us to the current standard, we decline to do so.

We set forth this well-established standard as articulated by our Supreme Court. "In [a defendant's] challenge to the sufficiency of the evidence . . . [w]hether we review the findings of a trial court or the verdict of

a jury, our underlying task is the same. . . . We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . In assessing the defendant's claim that the evidence against him was insufficient to establish his guilt . . . we must look to the trial court's findings of fact. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. . . .

"In evaluating evidence that could yield contrary inferences, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier [of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier [of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Drupals*, 306 Conn. 149, 157–58, 49 A.3d 962 (2012); see also *State* v. *George A.*, 308 Conn. 274, 283–84, 63 A.3d 918 (2013).

The defendant's argument that this court should reexamine this standard of review warrants little discussion, for, "[a]s an intermediate court of appeal, we are unable to overrule, reevaluate, or reexamine controlling precedent of our Supreme Court. . . . As our Supreme Court has stated: [O]nce this court has finally determined an issue, for a lower court to reanalyze and revisit that issue is an improper and fruitless endeavor." (Citation omitted; internal quotation marks omitted.) *State* v. *LaFleur*, 156 Conn. App. 289, 302–303, 113 A.3d 472, cert. denied, 317 Conn. 906, 114 A.3d 1221 (2015).

In any event, our existing sufficiency standard is virtually identical to the sufficiency standard formulated by the United States Supreme Court, which was established to protect the constitutional requirement of proof beyond a reasonable doubt recognized in *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Compare *State* v. *Drupals*, supra, 306 Conn. 157–58,

and *State* v. *Harris*, 85 Conn. App. 637, 652, 858 A.2d 284, 295 ("[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Internal quotation marks omitted.]), cert. denied, 272 Conn. 901, 863 A.2d 695 (2004), with *Jackson* v. *Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 ("After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon jury discretion only to the extent necessary to guarantee the fundamental protection of due process of law." [Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.]), rehearing denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979).

Moreover, contrary to the defendant's argument, under the existing standard, the reversal of a conviction for insufficiency of the evidence when there is only some evidence of guilt, rather than proof beyond a reasonable doubt, is not uncommon in our appellate jurisprudence. See, e.g., *State* v. *Stovall*, 316 Conn. 514, 521–23, 115 A.3d 1071 (2015) (evidence of defendant's storage of drugs packaged for sale in apartment in public housing complex known for drug trafficking, even if sufficient to show intent to sell drugs at unspecified future time and place, deemed insufficient to prove intent to sell drugs in or within 1500 feet of public housing beyond reasonable doubt); *State* v. *Jordan*, 314 Conn. 354, 385–88, 102 A.3d 1 (2014) (evidence that defendant discarded clothing he wore during attempted bank robbery as police chased him minutes afterward, even viewed in light most favorable to sustaining ver-

dict, insufficient to support tampering with physical evidence conviction because jury would have had to "stack inferences based on surmise" to conclude that defendant believed that official proceeding against him was probable); *State* v. *Krijger*, 313 Conn. 434, 459–60, 97 A.3d 946 (2014) (even accepting jury's resolution of conflicting accounts of defendant's statement, as reviewing court must, evidence insufficient to sustain true threat conviction where statement susceptible to both threatening and nonthreatening interpretations and state's evidence did not resolve ambiguity); *State* v. *Tenay*, 156 Conn. App. 792, 811–13, 114 A.3d 931 (2015) (en banc) (reversing defendant's conviction as third time offender because evidence of case abstract from Florida court, allegedly evincing prior conviction in Florida of driving under influence, and related fingerprint card were insufficient to prove beyond reasonable doubt that he had violated out-of-state statute for driving under influence). These cases demonstrate that our sufficiency standard, as applied by our reviewing courts, requires not just some evidence, but evidence sufficient to prove each element beyond a reasonable doubt.

Because we are bound by the existing sufficiency standard as enunciated by our Supreme Court, we will apply it to the defendant's sufficiency claims in the present case.

## II

## A

The defendant next claims that the court improperly concluded that there was sufficient evidence of his intent to influence Lopez' testimony. He argues that a court cannot properly find that the element of intent to influence has been proved without having before it "some evidence of what the witness was supposed to say, and how that testimony would be different from what would otherwise be offered." On the basis of our review of the record, we conclude that there was, in fact, such evidence before the court and that the court reasonably could have concluded on the basis of that evidence that the state proved this element beyond a reasonable doubt. Accordingly, the defendant's first sufficiency claim fails.

The defendant couches this claim in terms of statutory construction, arguing that the court misconstrued § 53a-149 to allow a finding that the defendant intended to influence testimony even in the absence of evidence of how the testimony that he asked Lopez to give was different from the testimony that Lopez would have given.[7] We disagree.

Section 53a-149 (a) provides: "A person is guilty of bribery of a witness if he offers, confers or agrees to confer upon a witness any benefit to influence the testimony or conduct of such witness in, or in relation to,

an official proceeding." To obtain a conviction under § 53a-149 (a), "[t]he state . . . was required to establish the following: (1) that the defendant offered, conferred or agreed to confer a benefit, (2) to a witness, (3) with the intent of influencing the witness' testimony or conduct in relation to an official proceeding." *State* v. *Davis*, 160 Conn. App. 251, 258, 124 A.3d 966, cert. denied, 320 Conn. 901, 127 A.3d 185 (2015). Our appellate courts have not had an occasion to interpret what constitutes an intent to influence within the meaning of § 53a-149 (a). We nevertheless have guidance in the form of our Supreme Court's construction of the predecessor of § 53a-149,[8] General Statutes (1930 Rev.) § 6168.[9]

When interpreting what constituted an intent to influence testimony within the meaning of that statute, the court in *State* v. *Ventola*, 122 Conn. 635, 640, 191 A. 726 (1937), stated that "[i]t is unnecessary that the thing offered or given is to induce a witness to testify falsely. It is sufficient if it were given with intent to influence his testimony or conduct. In the common acceptation of the term, the verb influence means to alter, move, sway, or affect. . . . If the promise or payment [was] made with the intent to affect the testimony or conduct of the prospective witness so that he would thereby be induced to testify more or less favorably to a party than he otherwise would have done, an intent to influence within the meaning of the statute exists." (Citation omitted; internal quotation marks omitted.)

In the present case, the trial court interpreted the intent to influence element of § 53a-149 (a) consistent with the interpretation condoned by the court in *Ventola*. The court stated that the defendant possessed the requisite intent to influence Lopez' testimony inasmuch as he "requested that the witness . . . Lopez alter his testimony and that the defendant would pay him to do it concerning alleged harassment by . . . Egan." The court interpreted the term influence as meaning to alter. This interpretation comports with our Supreme Court's construction of the relevant statutory language.

The defendant also argues that there was insufficient evidence of an intent to influence because there was no evidence before the court of what Lopez was supposed to say or how it was different from the testimony he would have given. Again, we disagree. "Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Internal quotation marks omitted.) *State* v. *Carter*, 317 Conn. 845, 857, 120 A.3d 1229 (2015). "Intent may be, and usually is, inferred from [a] defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Furthermore, it

is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Ortiz*, 312 Conn. 551, 565, 93 A.3d 1128 (2014).

In the present case, there was ample evidence before the court, in the form of Lopez' statement to Meekins, from which it reasonably could infer the defendant's intent to influence Lopez' testimony. Specifically, Lopez told Meekins that he told the defendant that he did not feel that Egan had harassed the defendant by asking Lopez where he was going when Egan saw Lopez with the defendant. Lopez stated that the defendant nonetheless wanted him to say that he thought Egan had harassed the defendant. In particular, the defendant wanted him to say that Egan normally did not ask him questions about his whereabouts or conduct and only did so because the defendant was present. The court credited Lopez' statements, noting that he had neither a motive to lie nor an "axe to grind" with the defendant. Indeed, the court found that after Lopez had told the defendant that he did not believe the defendant was harassed, "the defendant requested that . . . Lopez alter his testimony and that the defendant would pay him to do it . . . ."

On the basis of the foregoing evidence, considered along with the record as a whole in the light most favorable to the prosecution, we conclude that a reasonable fact finder could infer from Lopez' statements that the defendant sought to induce Lopez to testify more favorably than he otherwise would have testified. As the judges of our Superior Court often instruct jurors, "[w]hether the burden of proof resting upon the state is sustained depends not on the number of witnesses, nor on the quantity of the testimony, but on the nature and quality of the testimony. . . . [O]ne witness's testimony is sufficient to convict if it establishes all the elements of the crime beyond a reasonable doubt." Connecticut Criminal Jury Instructions (4th Ed. 2008) § 2.2-2, available at http://www.jud.ct.gov/JI/Criminal/part2/2.2-2.htm (last visited March 31, 2016). Having determined that Lopez' statements were credible, a fact finder reasonably could find that they established the element of an intent to influence testimony beyond a reasonable doubt.[10]

For the foregoing reasons, we reject the defendant's first sufficiency claim.[11]

B

The defendant also claims that there was insufficient evidence to prove beyond a reasonable doubt that he offered Lopez a benefit because there was testimony that he was not present at the Grand Avenue fire marshal's office with Lopez during the week of June 18, 2012. That testimony, he argues, rebutted the state's

evidence that an offer took place. We are not persuaded.

The record reveals the following relevant evidence presented at trial. The defendant presented the testimony of Charles Hewitt, a drill master in the fire department's training division at 230 Ella Grasso Boulevard, who testified that the defendant reported to him there for light duty during the week of June 18, 2012. According to Hewitt, the defendant was at the Ella Grasso location each day that week.

Hewitt's testimony did not account completely for the defendant's whereabouts during work hours that week. Regular work hours were 8 a.m. to 4 p.m., but Hewitt allowed the defendant to keep an earlier schedule and work from 7 a.m. to 3 p.m. Hewitt authorized the defendant's release from work on the morning of Monday, June 18, to attend his daughter's eighth grade graduation ceremony, which began at 10 a.m., and testified that the defendant reported to work at 1 or 1:30 p.m. that day. Hewitt himself was absent from work on Wednesday, June 20. Hewitt also testified that the defendant occasionally would go to physical therapy during the workday.

Also, the defendant testified that he stopped by the fire marshal's office where Lopez was stationed at some point in time and that a discussion took place there in which Lopez asked him for a percentage of the proceeds from the defendant's upcoming lawsuit.

The defendant argues, in essence, that Hewitt's testimony regarding the defendant's whereabouts during the week of June 18, 2012, was alibi evidence that precluded the court from reasonably concluding that the defendant made Lopez an offer. As noted, Lopez testified that "maybe the week of [June] 18" the defendant had approached him with the offer of 2 to 3 percent of any future recovery in exchange for certain testimony. Thus, the defendant contends that Hewitt's testimony was alibi evidence insofar as it was "a rebuttal by the defendant of the state's attempt to prove that the defendant was present at the scene of the crime and committed or participated in the acts charged." *State* v. *Vasquez*, 133 Conn. App. 785, 798, 36 A.3d 739, cert. denied, 304 Conn. 921, 41 A.3d 661 (2012).

"[A]lthough an alibi is sometimes spoken of as a defense, it operates, in this state, to entitle an accused to an acquittal when he has so far proved his alibi that upon all the evidence a reasonable doubt of his guilt has been raised. While the state is bound to prove beyond a reasonable doubt all the essential elements of the crime charged, including proof of the presence of the accused at the scene of the crime, where an alibi is asserted and relied upon as a defense . . . evidence offered by [the accused] upon that subject is to be considered by [the fact finder] in connection with all the rest, in determining whether he was present, and . . . if a rea-

sonable doubt upon that point exists, it is [the fact finder's] duty to acquit." (Internal quotation marks omitted.) *State* v. *McKnight*, 191 Conn. 564, 584, 469 A.2d 397 (1983); *State* v. *Vasquez*, supra, 133 Conn. App. 797.

On the basis of the foregoing authority, our task is to determine whether, in light of all of the evidence adduced at trial, Hewitt's testimony would have prevented any reasonable fact finder from concluding that the state proved beyond a reasonable doubt that the defendant made Lopez an offer. In performing this task, an appellate court may not invade the fact finder's function to resolve conflicting evidence. "In a case in which the evidence is conflicting, it is the quintessential . . . function [of the fact finder] to reject or accept certain evidence . . . . As long as evidence existed from which the [trier of fact] reasonably could have found the facts and drawn the inferences leading to its guilty verdict, it is our obligation to defer to those findings and inferences in passing on [a] sufficiency challenge." (Citations omitted; internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 160–61, 976 A.2d 678 (2009).

Initially, it is important to note that the state was not required to prove that the defendant offered Lopez a benefit on a particular date because time was not an element of the charged offense. *State* v. *Cates*, 202 Conn. 615, 626, 522 A.2d 788 (1987) ("[i]n our jurisdiction, it is well settled that the crime charged need not be proven to have occurred on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the [s]tatute of [l]imitations" [internal quotation marks omitted]); accord, *State* v. *Bergin*, 214 Conn. 657, 674, 574 A.2d 164 (1990) ("when the [information] uses the 'on or about' designation, proof of a date reasonably near to the specified date is sufficient" [internal quotation marks omitted]).[12]

Thus, notwithstanding Hewitt's testimony regarding the defendant's whereabouts during the week of June 18, viewing the record as a whole, there was sufficient evidence before the court from which it reasonably could have concluded that the defendant made Lopez an offer. In particular, the court credited Lopez' testimony that the defendant had approached him with an offer of payment in exchange for altering his testimony and did not credit the defendant's denial of the same or his testimony that the purported offer was a joke. According to Lopez, the defendant approached him "maybe the week of [June] 18."

The defendant also placed himself at the marshal's office where Lopez was stationed when he admitted that he went there at some point in time and that the two joked about the potential payout from the defendant's lawsuit. The defendant's phone records corroborated

Lopez' testimony that the defendant had called him seeking reconsideration after he had rejected the initial offer.

Finally, although Hewitt testified that the defendant was generally at the Ella Grasso location that week, his testimony did not account for the defendant's whereabouts during portions of Monday morning, all of Wednesday, portions of the remaining days of that week, or the defendant's admitted stop by the marshal's office where the discussion with Lopez took place. Viewing Hewitt's testimony against the backdrop of the other relevant evidence, and mindful that the state was not required to prove that the defendant made Lopez an offer at a precise time and date, we conclude that there was sufficient evidence from which the court reasonably could find that a benefit had been offered, as Lopez testified, during the week of June 18. Accordingly, we reject the defendant's second sufficiency claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the trial court referred to this claim as a workers' compensation claim, it appears actually to have been referring to the defendant's CHRO complaint in which he alleged, inter alia, that Egan had retaliated against him for filing a workers' compensation claim.

[2] Two allegations in the CHRO complaint are relevant to the present appeal: (1) when the defendant was in the presence of Corey Bellamy, another firefighter, Egan ordered the defendant to "gas up my car!"; and (2) when the defendant was on his way to lunch with Faustino Lopez, a deputy fire marshal, Egan asked Lopez "where are you going?" even though he had never asked Lopez that question before.

On February 22, 2013, the CHRO released jurisdiction over the defendant's complaint, and on May 23, 2013, the defendant commenced a civil action against the city, Egan, and Marcarelli that currently is pending in the Superior Court for the judicial district of New Haven.

[3] Lopez testified that this offer occurred "maybe the week of [June] 18."

[4] Testifying in his own defense, the defendant denied offering Lopez or Bellamy a percentage of recovery in any lawsuit in exchange for testimony and testified that the alleged offer was a joke.

[5] The defendant briefed a related claim that a reviewing court should apply a different sufficiency standard according to whether the defendant's trial was to the court or to a jury. Because he abandoned this aspect of his claim at oral argument, we need not consider it. We note, in any event, that our Supreme Court already has determined that the same standard applies regardless of whether a judge or jury is the fact finder. *State* v. *Drupals*, 306 Conn. 149, 157, 49 A.3d 962 (2012).

[6] See *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (due process requires proof beyond reasonable doubt of every element necessary to constitute crime with which defendant is charged).

[7] Inasmuch as the defendant challenges the court's interpretation of § 53a-149, which requires us to construe the statute in resolving the defendant's sufficiency claim, he raises an issue of law over which our review is plenary. *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299, 118 A.3d 26 (2015).

[8] "The legislature is presumed to be mindful of judicial construction that is relevant to any legislation it enacts. . . . It is presumed to know all the existing statutes and the effect that its action or [inaction] will have upon any one of them, and it is presumed to have intended that effect." (Citations omitted; internal quotation marks omitted.) *State* v. *Guckian*, 27 Conn. App. 225, 234–35, 605 A.2d 874 (1992), aff'd, 226 Conn. 191, 627 A.2d 407 (1993), abrogated on other grounds by *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 38 n.13, 779 A.2d 80 (2001).

[9] General Statutes (1930 Rev.) § 6168 provides in relevant part: "[A]ny person who shall give or offer anything to any such person, with intent thus to delay, influence or hinder him, or who, by any means, shall wilfully hinder

or prevent, or attempt to hinder or prevent, any such person from appearing as a witness or from giving his testimony in any such proceeding or from giving his deposition, shall be fined not more than five hundred dollars or imprisoned not more than one year or both.”

[10] We reject the defendant’s contention that his conviction was not supported by sufficient evidence because, viewing the evidence as a whole, it was “not implausible” that Egan told Lopez to say that what was actually a joke was a bribe. The fact that the defendant presented evidence that the offer was a joke did not obligate the trial court to accept that evidence. As detailed previously, the court heard other testimony from Lopez, who did not believe that the offer was a joke. Presented with this conflicting evidence, the court credited Lopez’ account, in which the defendant’s offer was an attempt to influence Lopez’ testimony, and we, of course, may not revisit that credibility determination. *State* v. *Morelli*, 293 Conn. 147, 160–61, 976 A.2d 678 (2009). As we have discussed, Lopez’ testimony, which was believed by the court, was sufficient to prove the intent to influence element beyond a reasonable doubt. Cf. *State* v. *Krijger*, supra, 313 Conn. 459–60 (even accepting fact finder’s resolution of conflicting testimony, evidence insufficient to prove element beyond reasonable doubt).

[11] In light of the evidence that the defendant asked Lopez to testify more favorably than he otherwise would have, the defendant’s related argument that the court improperly inferred an intent to influence solely from evidence that the defendant offered Lopez a benefit also must fail.

[12] We note that in the present case the state alleged in the information that the crime occurred on “diverse dates in May and June, 2012.”